Shannan WILSON, Appellant,

v.

Michael RIBBENS, Appellee.

No. 02–1632.

Supreme Court of Iowa.

April 7, 2004.

Brian J. Muench, and Jerald L. Rauter-kus of Erickson & Sederstrom, Omaha, for appellant.

Daniel B. Shuck of Heidman, Redmond, Fredregill, Patterson, Plaza, Dykstra & Prahl, L.L.P., Sioux City, for appellee.

STREIT, Justice.

The judicial system has a keen interest in the prompt and effective administration of justice. In this case, justice was neither prompt nor effective. The plaintiff filed a petition alleging the defendant's negligence caused her injuries in a car accident, but waited thirteen months to serve him. The plaintiff contends she did not serve the defendant because her attorney entered into an agreement with the defendant's insurance adjuster to hold off service until a settlement could be reached. Absent a scheduling order, her petition gathered dust in the courthouse long after the statutory deadline for service passed.

After settlement negotiations apparently evaporated, service was made and the defendant's attorney moved to dismiss for failure to effect timely service. The district court dismissed. The statute of limitations has passed.

We find the district court erred in failing to correctly recognize that an agreement not to effect timely service may constitute "good cause" for failing to effect service within the ninety-day period required by the rules of civil procedure. We reverse and remand for further proceedings.

## I. Scope of Review

 We review a motion to dismiss for failure to effect timely service of process for the correction of errors at law. *Carroll v. Martir,* 610 N.W.2d 850, 857 (Iowa 2000); *Henry v. Shober,* 566 N.W.2d 190, 191 (Iowa 1997). Where the district court makes findings of fact, those findings are binding upon us so long as they are supported by substantial evidence. *Carroll,* 610 N.W.2d at 857. We are not, however, bound by the district court's legal conclusions or application thereof. *Id.*

 Motions to dismiss are usually limited to the pleadings, and on such a motion a court generally ought not consider matters outside the pleadings. *Id.* at 856 (citing *Estate of Dyer v. Krug,* 533 N.W.2d 221, 223 (Iowa 1995)). Usually, "[s]ummary judgment is the appropriate remedy when parties wish to rely on facts outside the pleadings." *Id.*

In a limited number of circumstances, however, resort to matters outside the pleadings is permissible on a motion to dismiss. *Id.* As we explained in *Carroll,* matters outside the pleadings may be considered when

(1) those facts arise after the plaintiff has filed the petition, (2) the parties do not dispute those facts, and (3) the issues in the motion to dismiss do not concern the adequacy of the petition to state a claim for relief.

*Id.* Although the record before us contains an affidavit and two letters which the plaintiff filed in support of her resistance to the motion to dismiss, our analysis is hampered by the dearth of factual findings in the record: endemic in a ruling on a motion to dismiss in this context, the defendant has not filed an answer, and the district court's "Statement of the Facts" is mostly a summary of the plaintiff's claims.

## II. Prior Proceedings

On July 30, 2001, Shannan Wilson filed a lawsuit in the district court for Sioux County, Iowa, alleging she suffered injuries on August 1, 1999, in a car accident as result of Michael Ribbens' negligence. Shortly before filing the lawsuit, Wilson's attorney, Jerald Rauterkus, sent a letter to Jim Edwards, a claims adjuster for Allied Insurance. On July 27, 2001, Rauterkus wrote:

Dear Mr. Edwards:

Enclosed is a copy of the lawsuit that was filed on behalf of Ms. Wilson.

Pursuant to our agreement, I will not have your insured served with this suit;

rather, we will delay serving process in the hopes that we can reach a settlement in this matter.

My client is continuing to treat with Dr. Franco. As soon as I have more definite information from him, I will provide it to you along with a demand. Please direct all questions on this matter to my office.

Sincerely,

Jerald L. Rauterkus [signed]

Approximately ten days later, Edwards responded in a letter:

Dear Jerald:

I have received your letter of representation and suit papers in regards to the injuries sustained to your client, Shannon [sic] Wilson. Per your letter, you are holding off serving the suit papers to my insured to see if we can settle this. As we had previously discussed on the phone, there appears to be quite a bit of information that I do not have in regards to your client's treatment and injuries. Please obtain copies of all medical bills and reports and forward to me for my review. Then we can discuss the settlement of this claim for your client.

If there are any further questions, please feel free to call me. . . .

Sincerely,

Jim Edwards [unsigned]

In an affidavit later filed with the district court, Rauterkus swore Edwards made inquiries every sixty to ninety days; in turn, Rauterkus provided Edwards with updated medical information when it was available. A final medical report was finished on May 29, 2002, and Rauterkus forwarded a copy to Edwards. Settlement negotiations broke down, however, and Rauterkus served Ribbens on July 22, 2002.

Pursuant to Iowa Rule of Civil Procedure 1.302(6) (2002),[1] on July 25, 2002, Ribbens' attorney moved to dismiss for failure to serve in a timely manner. The motion pointed out Wilson had not served Ribbens within ninety days, as required by the rule.

Wilson alleged there was "good cause" for the delay, and the district court ought not dismiss the case. Wilson also claimed the doctrine of promissory estoppel prohibited Ribbens from seeking a dismissal for lack of timely service. To buttress these arguments, in an affidavit Wilson's counsel stated Edwards had represented he had the authority to settle on Ribbens' behalf, and that Edwards had previously settled Wilson's husband's claim arising out of the same car accident.

The district court dismissed. The court, relying upon our decision in *Henry v. Shober*, 566 N.W.2d 190 (Iowa 1997), held there was no good cause for the delay. The court also raised, sua sponte, another issue: whether rule 1.302 gives the court discretion to extend the timeframe for process even *absent* good cause. In spite of the fact other courts have exercised discretion under similarly-worded rules absent good cause, the district court refused to do so because we had not yet determined whether our rule permitted it. *See generally* 4B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1137, at 365 (2002) [hereinafter Wright & Miller]. The district court did not rule on Wilson's estoppel argument.

On appeal, Wilson again asserts there was good cause for her delay in service. Taking a cue from the district court, Wilson also contends that, even if we should decide there was *not* good cause for the delay in service, Iowa Rule of Civil Proce-

---

1. During the pendency of this appeal, the rule was renumbered to subsection 1.302(5). To avoid confusion, throughout this opinion we simply refer to rule 1.302.

dure 1.302 gives the court discretion to grant an extension. Wilson claims the court erred because it failed to exercise this discretion. Ribbens, in turn, maintains Wilson should not be allowed to raise the discretion issue because principles of error preservation forbid an appellate court from entertaining an argument not raised in the district court. In the alternative, Ribbens argues the court does not have such discretion.

Wilson also renews her claim Ribbens is estopped from seeking dismissal because of the parties' agreement. On appeal, however, Wilson's estoppel argument has evolved to incorporate two separate analyses: Wilson now alleges both promissory *and* equitable estoppel, although Wilson's *equitable* estoppel argument was not presented to the trial court.

### III. Merits

■ A civil action is commenced when a petition is filed in the district court. Iowa R. Civ. P. 1.301(1) (2002). The plaintiff must also serve the defendant with notice the action was filed. *See* Iowa R. Civ. P. 1.302. "An original notice is the formal writing, issued by authority of law, for the purpose of bringing defendants into court to answer plaintiff's demands in a civil action." *Jacobson v. Leap,* 249 Iowa 1036, 1040, 88 N.W.2d 919, 921 (1958). Our rules of civil procedure expressly require plaintiffs to effect service within ninety days after the filing of the petition, or risk dismissal. Iowa R. Civ. P. 1.302; *see Meier v. Senecaut III,* 641 N.W.2d 532, 541 (Iowa 2002) (explaining recent amendment to rule pertaining to service). Iowa's service rule reads as follows:

> If service of the original notice is not made upon the defendant ... within 90 days after filing the petition, the court ... shall dismiss the action without prejudice ... or direct an alternate time or

manner of service. If the party filing the papers shows good cause for the failure of service, the court shall extend the time for service for an appropriate period.

Iowa R. Civ. P. 1.302.

We begin our analysis with the recognition the Iowa Rules of Civil Procedure "are to be liberally construed for the purpose of promoting the speedy determination of litigation upon its merits...." *Krueger v. Lynch,* 242 Iowa 772, 779, 48 N.W.2d 266, 270 (1951).

> We cannot, however, ignore a clear statutory requirement to achieve what appears to be the best result in a particular case. Such action almost always makes bad law.... "The so-called technicalities of the law are not always what they seem. When they establish an orderly process of procedure, they serve a definite purpose and are more than technical; they have substance, in that they lay down definite rules which are essential in court proceedings so that those involved may know what may and may not be done, and confusion, even chaos, may be avoided. They are necessary; without them litigants would be adrift without rudder or compass."

*Krebs v. Town of Manson,* 256 Iowa 957, 963, 129 N.W.2d 744, 748 (1964) (quoting *Esterdahl v. Wilson,* 252 Iowa 1199, 1208, 110 N.W.2d 241, 246 (1961)). The present rule clearly requires a court to grant an extension to the ninety-day requirement on a showing of good cause. Iowa R. Civ. P. 1.302 ("If the party filing the papers shows good cause for the failure of service, the court *shall* extend the time for service for an appropriate period." (Emphasis added.))

■ What is "good cause"? In interpreting "good cause," we have looked to the decisions of other courts construing statutes similar to the Iowa rule, including

federal courts interpreting Federal Rule of Civil Procedure 4(m). *See, e.g., Henry,* 566 N.W.2d at 192–93; *Turnbull v. Horan,* 522 N.W.2d 860, 861 (Iowa Ct.App.1994) (when construing state statutes patterned after federal ones, the decisions of federal courts interpreting those federal statutes are persuasive but not conclusive); *cf.* Fed.R.Civ.P. 4(m) (imposing similar 120–day rule for service). In particular, we have stated "good cause" means

> [t]he plaintiff must have taken some affirmative action to effectuate service of process upon the defendant or have been prohibited, through no fault of his [or her] own, from taking such an affirmative action. Inadvertence, neglect, misunderstanding, ignorance of the rule or its burden, or half-hearted attempts at service have generally been waived as insufficient to show good cause. Moreover, intentional nonservice in order to delay the development of a civil action or to allow time for additional information to be gathered prior to "activating" the lawsuit has been held to fall short of [good cause].

*Henry,* 566 N.W.2d at 192–93 (quoting *Vincent v. Reynolds Mem'l Hosp., Inc.,* 141 F.R.D. 436, 437–38 (N.D.W.Va.1992)). Confirming this interpretation of good cause, we also now find

> [g]ood cause is likely (but not always) to be found when the plaintiff's failure to complete service in timely fashion is a result of the conduct of a third person, typically the process server, the defendant has evaded service of the process or engaged in misleading conduct, the plaintiff has acted diligently in trying to effect service or there are understandable mitigating circumstances. . . .

Wright & Miller at 342. Our recent cases reflect these principles. *See, e.g., Meier,* 641 N.W.2d at 542–43 (while confusion over the identity of the defendant could support some delay, there was no "good cause" where, once this confusion was resolved, plaintiff only attempted to serve the defendant at his residence during the work-day). Even before the rule was amended to mandate an extension for "good cause," however, we have long required plaintiffs to justify certain delays in service. *See, e.g., Mokhtarian v. GTE Midwest Inc.,* 578 N.W.2d 666, 669 (Iowa 1998) (An attorney's "lack of knowledge, misunderstanding or ignorance of our rules of civil procedure," as well as the fact that defendant may have known about the filing of the lawsuit, do not justify a seven-month delay in service.). We recently indicated that we have equated "good cause" with the "justification" standard used in pre-amendment cases. *Carroll,* 610 N.W.2d at 858.

The district court, relying upon *Henry,* held Wilson failed to show "good cause" for the delay in service. In *Henry,* the plaintiffs filed their petition before the expiration of the statute of limitations, but did not serve the defendant for another 169 days, a period of time in which the statute of limitations passed. 566 N.W.2d at 191. The plaintiffs alleged the delay was justified because of on-going settlement negotiations with the defendant's insurance company. *Id.* We disagreed, and held "settlement negotiations, even if done in good faith, do not constitute adequate justification *or* good cause for delaying service." *Id.* at 193 (emphasis added).

In dicta, however, we wrote:

> If the parties wish to continue settlement discussions beyond the limitations period, the plaintiff should secure a statute of limitations extension, in writing, from the defendant and the defendant's insurer.

*Id.* The district court distinguished the case at bar from our dicta, and dismissed. The court pointed out Wilson only claimed

(1) Wilson and *Ribbens' insurance adjuster* (and not Ribbens himself) entered into an agreement not to serve Ribbens, and (2) Wilson only secured an agreement *not to effect timely service*, and not a statute of limitations extension.

*Henry* makes clear good-faith settlement negotiations standing alone do not constitute good cause for delays in service beyond the ninety-day limit. *See Id.* *Henry* is consistent with the decisions of a number of other courts, federal and state, applying Federal Rule of Civil Procedure 4(m) or similar state rules. *See, e.g., Mid-Continent Wood Prods., Inc. v. Harris,* 936 F.2d 297, 302 (7th Cir.1991); *Healthcare Compare Corp., v. Super Solutions Corp.,* 151 F.R.D. 114, 115–16 (D.Minn. 1993); *Leonard v. Stuart–James Co.,* 742 F.Supp. 653, 662 (N.D.Ga.1990); *Davis–Wilson v. Hilton Hotels, Corp.,* 106 F.R.D. 505, 509 (E.D.La.1985); *Martin v. Hoblit,* 133 Idaho 372, 987 P.2d 284, 288–89 (Idaho 1999); *Holmes v. Coast Transit Auth.,* 815 So.2d 1183, 1186–87 (Miss.2002); *State ex rel. Charleston Area Med. Ctr., Inc. v. Kaufman,* 197 W.Va. 282, 475 S.E.2d 374, 380 (W.Va.1996).

Some of these same courts, however, have indicated there may be good cause for delay *if* the parties had entered into an *agreement* to extend the service period. *See Henry,* 566 N.W.2d at 193; *Martin,* 987 P.2d at 288 (pointing out "there had been no agreement by [the defendant's] insurer to waive the time limits found in [the rule]" nor any evidence the defendant or his insurance company "enticed the [plaintiffs] to forego service or led their attorney to believe [the defendant] would not assert his rights under [the rule]"). Similarly, one lower federal court found good cause where the plaintiff, pursing good-faith settlement negotiations, did not effect timely service at the express request of the defendant's insurance carrier.

*Gambino v. Village of Oakbrook,* 164 F.R.D. 271, 275 (M.D.Fla.1995).

While we remain highly skeptical of the utility of agreements delaying service or extending the statute of limitations in pending litigation in the hope of settlement, in light of the foregoing authority we hold such agreements may constitute "good cause" under Iowa Rule of Civil Procedure 1.302, and reverse. Unlike *Henry,* in this case the plaintiff alleges her failure to serve the defendant is the direct result of an *agreement* with the defendant's insurance adjuster. This alleged agreement, it is contended, is coupled with the adjuster's periodic requests for medical information. When juxtaposed with Ribbens' subsequent motion to dismiss, his insurance adjuster's prior conduct, if true, would be highly misleading, and an understandable mitigating circumstance in Wilson's favor. *See* Wright. & Miller at 342. Such a failure to serve would not be the result of "[i]nadvertence, neglect, misunderstanding, ignorance of the rule or its burden, or half-hearted attempts at service. . . ." *Henry,* 566 N.W.2d at 192–93 (citations omitted).

In reaching this conclusion, we reject Ribbens' contention that "good cause" should be limited only to agreements to extend the statute of limitations, and does not contemplate agreements to extend time for service. The rule does not differentiate. Our suggestion in *Henry* to obtain written extensions of the statute of limitations is not the *standard* for our analysis under the rule; rather, it is *sound advice* for parties wishing to delay service without risking dismissal. Although a factor in determining good cause for delay, we reject Ribbens' claim that any alleged agreement must be signed by both the defendant and defendant's insurer. *See Gambino,* 164 F.R.D. at 275 (permitting

recovery where no evidence defendant was prejudiced).

Our decision today accords with long established legal principles. Before the service rule was amended to require an extension upon a showing of good cause, to prevent similar injustices we have long applied the doctrine of estoppel to pre-trial rules regarding the limitation of actions. *See, e.g., Weitz' Sons v. United States Fid. & Guar. Co.*, 206 Iowa 1025, 1033–35, 219 N.W. 411, 415 (1928) (defendant in counterclaim estopped from pleading the statute of limitations where an agreement claim should await the outcome of another case); *Holman v. Omaha & Council Bluffs Ry. & Bridge Co.*, 117 Iowa 268, 273, 90 N.W. 833, 834 (1902) (railroad estopped from asserting a statute of limitations defense after one of its directors entered into settlement negotiations with the plaintiff and orally promised not to plead the statute of limitations if she delayed filing her suit). We have acknowledged the applicability of this doctrine in the service of process context. *See Krebs,* 256 Iowa at 962, 129 N.W.2d at 747 (in upholding determination service was invalid, nonetheless noting that "[t]here is however no claim or proof of conduct on the part of either defendant which might constitute a waiver or estoppel"); *see also DeWall v. Prentice,* 224 N.W.2d 428, 430 (Iowa 1974) ("A statute cannot stand in the way of waiver or equitable estoppel when the facts demand their application in the interest of justice and right." (quoting *Kallock v. Elward,* 118 Me. 346, 108 A. 256, 258 (Me.1919))).

Because the district court held an agreement not to effect timely service cannot constitute "good cause" under the statute, we find an error at law, and reverse. Given the dearth of factual findings in the record, including the lack of a finding of an agreement, we remand for further pro-

ceedings. On remand, the district court shall make factual findings and reexamine its judgment in light of this opinion. Given our decision on this issue, we decline to reach the parties' other arguments regarding estoppel and discretion. We think the factual grounds upon which such a decision would need to be based or the need for such a decision in this case are too speculative at this time. *See In re Marriage of Neff,* 675 N.W.2d 573, 578 (Iowa 2004); *cf. State ex rel. Miller v. Hydro Mag Ltd.,* 379 N.W.2d 911, 913 (Iowa 1986) (in action for adjudication of law points, declining to rule on "speculative and abstract legal questions which may become moot by the time the facts are finally determined").

## IV. The Remedy: Scheduling Orders and Conferences

We caution that nothing in this opinion should be construed as an endorsement of the practices engaged in by the parties. In practice, effective case management by our court administrators should preclude cases such as these from arising. As indicated at the outset of this opinion, the court system has a keen interest, notwithstanding the wishes of the parties, to keep the wheels of justice in motion:

> [W]hen it comes to courthouse filings, it is necessary to draw a line between bringing a suit and merely filing a petition in order to delay deciding whether to do so. *It is not appropriate to expect judicial process to wait ... while a plaintiff decides.*

*Alvarez v. Meadow Lane Mall Ltd. Pship.,* 560 N.W.2d 588, 591 (Iowa 1997) (emphasis added). Trials should be scheduled shortly after the petition is filed, and parties should be required to move litigation forward. Iowa's service-of-process rule was crafted with this interest in mind: *"[n]inety days was chosen in order that service would be perfected prior to the issuance of*

*scheduling orders by most courts."* Iowa R. Civ. P. 1.302, comment. Here, there is no evidence in the district court file of a scheduling order, which we would expect to find. *See id.; id.* 1.602 (providing effective tools for pretrial management, including scheduling orders and conferences, which carry out several laudable goals, including "[e]xpediting the disposition of the action," "[e]stablishing early and continuing control so that the case will not be protracted because of lack of management," "[d]iscouraging wasteful pretrial practices," "[i]mproving the quality of the trial through more thorough preparation," and "[f]acilitating the settlement of the case"); Iowa Ct. R. 23.5, Form 1 (contemplating, in Iowa time standards for case processing, a "120 Day Notice of Civil Trial Setting Conference"). Because there was no scheduling order in this case, service did not become an issue for more than a year after the petition was filed—*nothing happened in the file between the petition and service a year later.*

Trial scheduling customs vary among the eight judicial districts. It is a better practice to have the district court administrator or judge setting a trial scheduling conference approximately ninety to one hundred twenty days after the filing of the petition, even if it means only the plaintiff attends. Failing this, at the very least the district court should sua sponte direct the plaintiffs to expedite matters or face dismissal. Iowa R. Civ. P. 1.302 ("If service . . . is not made . . .

within 90 days after filing the petition, the court, upon motion or its own initiative after notice to the party filing the petition, shall dismiss the action without prejudice . . . or direct an alternate time or manner of service."). In any event, private agreements not to effect service should not be permitted to delay such matters for an extended length of time; at some point early in the process, the court should take hold of the case and *move matters along.*[2] To do otherwise permits cases to sit in the system growing whiskers, an unnecessary and most undesirable result.

## V. Conclusion

We find the district court erred in failing to recognize that an agreement not to effect timely service may constitute "good cause" for not effecting service within the ninety-day period required by the rules of civil procedure. We therefore reverse and remand for further proceedings. Our decision, however, should not be understood as a retreat from our longstanding desire for the prompt and effective administration of justice; diligent court administration should obviate the need for courts to rule in this area.

### REVERSED AND REMANDED.

---

**2.** This is not to say that the trial scheduling process must be rigid and inflexible; after considering all the factors relevant to setting cases for trial, a court may adapt the trial scheduling process to fit the needs of a particular case.