WATERMAN, Justice,
(dissenting).
I respectfully dissent. Today’s majority effectively overrules our precedent requiring the defendant’s agreement or misleading conduct amounting to an estoppel to extend Iowa Rule of Civil Procedure 1.302(5)’s ninety-day deadline to serve suit papers and replaces that clear, bright-line rule with an amorphous standard. A party may now evade the ninety-day service requirement without an agreed extension simply by negotiating and sending a letter the majority acknowledges
contained only a vague allusion suggesting that service would occur at some point in the future once negotiations fail. But, it was too vague to constitute an offer to alter the rule by delaying service in exchange for a promise not to seek a dismissal.
Under our existing precedent, exceeding the ninety-day deadline was deemed to be presumptively abusive and shifted the burden to the plaintiff to show justification. See Meier v. Senecaut, 641 N.W.2d 532, 542 (Iowa 2002). We had also made it clear that settlement negotiations — even if done in good faith — were not an adequate justification. See Henry v. Shober, 566 N.W.2d 190, 193 (Iowa 1997). However, an agreement to extend service could be an adequate justification. See Wilson v. Ribbens, 678 N.W.2d 417, 422-23 (Iowa 2004). We have also indicated that conduct by the defendant amounting to a waiver or estoppel could be an adequate justification. See id. at 423.
This framework, I believe, provided clear guidance to the bar and to district courts. The majority now casts aside that framework and substitutes a new, circular approach under which “good cause” can be shown by “an examination of all of the *605 surrounding facts to determine if they reveal ‘understandable mitigating circumstances,’ ” quoting Wilson without acknowledging the court was referring to an agreement to delay service. See id. at 421. With respect, it is not a workable standard to allow unspecified “understandable mitigating circumstances” to excuse untimely service in the absence of an agreed extension.
We squarely held in Henry that “settlement negotiations, even if done in good faith, do not constitute adequate justification or good cause for delaying service.” 566 N.W.2d at 193. We aptly observed:
If we were to allow delays in service for ongoing settlement negotiations, plaintiffs would have no incentive to serve the defendant within a reasonable time. Further, we do not see how service of the original notice and petition is a hindrance to the settlement process. Prompt service allows a defendant to investigate the claims and prepare its defense, thus contributing to its evaluation of a case. If the parties wish to continue settlement discussions beyond the limitations period, the plaintiff should secure a statute of limitations extension, in writing, from the defendant and the defendant’s insurer.
Henry, 566 N.W.2d at 193. What has changed?
In Wilson, we reiterated that “good-faith settlement negotiations standing alone do not constitute good cause for delays in service beyond the ninety-day limit.” 678 N.W.2d at 422. We noted the Henry rule “is consistent with the decisions of a number of other courts, federal and state, applying Federal Rule of Civil Procedure 4(m) or similar state rules.” Wilson, 678 N.W.2d at 422 (surveying authorities). Indeed, a federal district court recently echoed our observations in Henry:
Moreover, this Court rejects the basic premise that negotiations to resolve an action can constitute good cause for failing to serve. The Federal Rules of Civil Procedure provide clear, fixed dates by which action must be taken for many salutary purposes. Opposing parties have the benefit of being able to know (or at least predict) when action will be taken against them; clients have the assurance that their counsel will be required to afford timely attention to their case; and the court system is assured that parties will not “reserve a table” by filing a complaint, and then negotiate endlessly at their leisure while the court’s docket becomes crowded with aging, dormant cases.
Rees v. Bd. of Cnty. Comm’rs, Civ. Action No. 07-CV-00230-MSK-KLM, 2008 WL 3285256, at *2 (D.Colo. Aug. 7, 2008).
In Wilson, we held that an agreement to delay service may constitute “good cause” under rule 1.302. 678 N.W.2d at 422. That unanimous opinion began by acknowledging “[t]he judicial system has a keen interest in the prompt and effective administration of justice.” Wilson, 678 N.W.2d at 418. We expressed skepticism “of the utility of agreements delaying service or extending the statute of limitations in pending litigation in the hope of settlement.” Id. at 422. But, we acknowledged that some federal courts found good cause for delay “if the parties had entered into an agreement to extend the service period.” Id. We noted it would be “highly misleading” for an insurer to agree to an extension and then file a motion to dismiss for untimely service. Id. That is not what happened with Rucker. Our decision in Wilson made clear that settlement negotiations alone, in the absence of defendant’s agreement to extend the deadline, fell short of establishing good cause for delayed service. Id.
*606 The majority cites no intervening change in the law or trend in the decisions of federal courts or other states applying equivalent rules. Nor does the majority contend that requiring an agreed extension in lieu of timely service has proven with experience to be unfair or impractical. To the contrary, I believe the common practice is to either accomplish service within ninety days or secure an agreed extension. Indeed, Rucker’s counsel candidly stated he expected to be “chewed out” at oral argument before our court for his failure to get an “explicit” agreement to delay service. There is no good reason to undermine the clarity of rule 1.302(5) or abandon our precedent here.
It nearly goes without saying that the doctrine of stare decisis is one of the bedrock principles on which this court is built. It is an important restraint on judicial authority and provides needed stability in and respect for the law.
Kiesau v. Bantz, 686 N.W.2d 164, 180 (Iowa 2004) (Cady, J., dissenting).
Stare decisis should carry special weight, I believe, when we are interpreting our own rale. “If that rule is now found to be too harsh and inelastic, we have reserved the power to ourselves ... to amend it.” Stolar v. Turner, 236 Iowa 628, 651, 19 N.W.2d 585, 595 (1945) (Smith, J., dissenting). I recognize there is a tension between expediting litigation and accommodating the desire of parties to engage in continued settlement negotiations. However, if we are going to shift the balance in this area, it makes far more sense to do so by promulgating a proposed rule change and inviting public comment.[1]
The majority acknowledges there was no agreement, either expressed or implied, to extend the time for service. Rucker never contended that the defendant engaged in conduct that would amount to an estoppel to excuse the untimely service. Nevertheless, the majority says that dismissal is inequitable because of “the action by the insurance representative in this case in continuing to negotiate with Rucker’s attorney with knowledge that Rucker did not plan to timely serve the petition” — essentially the argument we rejected in Henry. The majority tries to distinguish Henry on grounds that the adjuster in that case was unaware plaintiffs counsel planned to delay service. Nothing in Henry indicates that distinction made a difference. To the contrary, the Henry court stated, “It is irrelevant whether or not State Farm knew the Henrys intended to file a lawsuit.” 566 N.W.2d at 192. So, why would knowledge regarding a plan to delay service of process matter? In any event, we reiterated in Wilson — a case in which the insurer knew plaintiff planned to delay service — that good-faith negotiations were insufficient to excuse untimely service. Wilson, 678 N.W.2d at 422.
The majority also states, “The Taylors were not obligated to respond to the plan by Rucker to delay service. Yet, their actions in not responding to his plan and continuing to negotiate” make dismissal “inequitable.” This strikes me as doubly incorrect. In the first place, we are holding in this case that the insurer did have a duty to respond if it wanted to be able to assert the ninety-day deadline for service. Second, we are, in effect, shifting the burden that was previously on the plaintiff to show “justification.” Meier, 641 N.W.2d at 542.
I prefer to see cases resolved on their merits, and I think there is something to *607 be said for amending our rule to conform to Federal Rule of Civil Procedure 4(m). Under that rule, even if the plaintiff fails to show “good cause” for not serving the defendant by the deadline, the district court has discretion to extend the time for service. See Fed.R.Civ.P. 4(m) (providing that, if a defendant is not timely served, the court “must dismiss the action without prejudice against that defendant or order that service be made tvithin a specified time ” (emphasis added)). This would have given the district court the flexibility to do what it did in this case.
A significant advantage of this approach is that it allows for some play in the joints. District courts would have the ability either to afford or to deny relief to the plaintiff in a case like this without being subject to an appellate reversal. Unfortunately, under the majority’s approach, the legal rule is ill-defined and the district court has no discretion in applying it. This seems to me likely to lead to increased appellate litigation in this area.
For the foregoing reasons, I respectfully dissent.
MANSFIELD, J., joins this dissent.