# IN THE COURT OF APPEALS OF IOWA

————————————

No. 25-0473
Filed June 10, 2026

————————————

**Kortnie Wear and Andrew Wear, Individually and as
Co-Administrators of the Estate of C.W.,**
Plaintiffs–Appellants,

v.

**Yadira Garcia, M.D., Southeast Iowa Regional Medical Center, Inc.,
Southeast Iowa Regional Medical Center, Inc. d/b/a Southeast Iowa
Regional Medical Center Fort Madison Campus, Great River Health
System, Inc., Susan Holtkamp, CPNP, and the State of Iowa,**
Defendants–Appellees.

————————————

Appeal from the Iowa District Court for Des Moines County,
The Honorable Shane M. Wiley, Judge.

————————————

**REVERSED AND REMANDED**

————————————

Ryan G. Koopmans of Koopmans Law Group, LLC, Des Moines, and Blake
Gibney, Farl Greene, and Pressley Henningsen of RSH Legal P.C., Cedar
Rapids, attorneys for appellants.

Desirée A. Kilburg, Jacob H. Schiller, and Paul Esker (until withdrawal) of
Bradley & Riley PC, Iowa City, attorneys for appellees Southeast Iowa
Regional Medical Center and Susan Holtkamp, CPNP.

Jessica Tucker Glick and Joo Yeon Lee of Phelan Tucker Law L.L.P., Iowa City, attorneys for appellee State of Iowa.

Diana Kenney, Frederick T. Harris, John A. Maschman, and Olivia R. McDowell of Lamson Dugan & Murray LLP, West Des Moines, attorneys for appellee Yadira Garcia, M.D.

—————————————————

Considered without oral argument
by Greer, P.J., Chicchelly, J., and Doyle, S.J.
Opinion by Greer, P.J.

**GREER, Presiding Judge.**

On behalf of the Estate of C.W. and as individuals, his parents, Kortnie and Andrew Wear (the Wears), bring this appeal to dispute the district court's dismissal of their medical negligence lawsuit. Raising a failure to timely serve, Dr. Yadira Garcia brings a cross-appeal asserting the claims against her should have been dismissed for that reason as well.

The medical providers[1] contend that the dismissal was proper because the Wears, without good cause, failed to timely certify their experts for a period of almost three months, which constituted a serious deviation from the Iowa Code section 668.11 (2024) requirements. But the Wears assert they substantially complied with the disclosure obligation, there was good cause to extend the deadline based on several facts, and the medical providers will not be prejudiced if the deadline is extended.

In applying the current caselaw, which was not available to the district court at the time of its decision, we find the Wears met their burden to show good cause. Thus, we are required to reverse the district court's dismissal for abuse of discretion. We also find good cause existed to excuse the Wears' failure to timely serve Dr. Garcia. We remand for further proceedings consistent with this opinion.

---

[1] The Wears initially sued Dr. Yadira Garcia, an obstetrician/gynecologist, Susan Holtkamp, a certified pediatric nurse practitioner, and several medical centers that we will refer to as "Southeast Iowa Regional Center." A couple of months later, the Wears also added the State of Iowa as a party based upon allegations of negligent care C.W. received from the University of Iowa Children's Hospital and other related entities. We collectively call the defendants the "medical providers" unless there is a reason to reference a separate party.

## I. Background Facts and Proceedings.

On August 1, 2023, the Wears petitioned for damages based upon their allegations of professional negligence of the medical providers that they claim caused C.W.'s death following the baby's delivery on August 18, 2021.[2] Eventually, after the Wears added the State of Iowa as an additional defendant, all medical providers answered, denying the claims. In October, the Wears filed four notarized Iowa Code section 147.140 certificates of merit, signed by medical practitioners describing breaches of the standard of care by the medical providers involved in this litigation.

As the case proceeded, the parties consulted and, on October 23, filed a trial scheduling and discovery plan (TSDP) pursuant to Iowa Rule of Civil Procedure 1.906. As it related to the experts, the parties agreed "that in lieu of [section] 668.11," each party would certify experts by name, subject matter of expertise, and qualifications, and would serve the disclosures under Iowa Rule of Civil Procedure 1.500(2)(b)[3] on the same day as their respective

---

[2] C.W. died on August 20, 2021. The causes of death listed were "cardiovascular failure due to or as a consequence of pulmonary hemorrhage, severe metabolic acidosis, with an underlying cause of hypoxic ischemic encephalopathy."

[3] Rule 1.500(2)(b) relates to initial disclosure of expert testimony and requires submission of a written report, signed and prepared by the witness, which includes:

> (1) A complete statement of all opinions the witness will express and the basis and reasons for them.

> (2) The facts or data considered by the witness in forming the opinions.

> (3) Any exhibits that will be used to summarize or support the opinions.

> (4) The witness's qualifications, including a list of all publications authored in the previous ten years.

expert designations were due. The Wears had until September 9, 2024 to designate experts and the medical providers agreed to do the same as to their experts by December 9. Rebuttal experts would be certified "[o]nly upon court approval, but no later than February 7, 2025." Due to the "complexity of the case," the parties then jointly requested an extension of the trial scheduling timeframe for civil suits. Thus, trial was scheduled to begin on March 31, 2026.

In January 2024, Dr. Garcia moved for summary judgment, contesting the "substitute service"[4] of the original notice and petition and indicating there was a "lack of jurisdiction over the person." The Wears resisted the motion by requesting an extension of time to serve Dr. Garcia under Iowa Rule of Civil Procedure 1.302(5),[5] even though the deadline for service had expired. In the meantime, Dr. Garcia was personally served on January 9, 2024, while the motion was pending. In granting the extension of time to serve, the district court noted that personal service on Dr. Garcia was

> (5) A list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition.

Iowa R. Civ. P. 1.500(2)(b)(1)–(5).

[4] On August 10, 2023, a deputy sheriff made substituted service, accepted by a staffing specialist at Southeast Iowa Regional Medical Center.

[5] As the supreme court has reiterated:

> If service of the original notice is not made upon the defendant within 90 days after filing the petition, the court, upon motion or its own initiative after notice to the party filing the petition, shall dismiss the action without prejudice as to that defendant. If the party filing the papers shows good cause for the failure of service, the court shall extend the time for service for an appropriate period.

*Rucker v. Taylor*, 828 N.W.2d 595, 599 (Iowa 2013) (cleaned up) (quoting Iowa R. Civ. P. 1.302(5)).

sixty-one days beyond the ninety-day deadline, but Dr. Garcia had already answered. Although Dr. Garcia contested service as an affirmative defense in her answer and the district court noted "no one apparently read the [a]nswer," once aware of the defect in service, personal service was immediately achieved. In May, Dr. Garcia applied for interlocutory appeal from the April order, and on June 18, the district court stayed "pending proceedings" until resolution of that appeal. The stay lasted forty-five days from June 18 to August 2 when the application was denied. Procedendo issued on August 22.

Now with the stay lifted, the Wears' expert disclosure deadline passed in September without any disclosures being served. At the end of November, shortly before the medical providers' disclosures were due, the medical providers all moved for summary judgment, asserting that the case should be dismissed for failing to comply with the expert disclosure deadline under Iowa Code section 668.11(1), which requires the party to "certify to the court and all other parties the expert's name, qualifications and the purpose for calling the expert." They also jointly asked for an extension of their December 9 expert disclosure deadline, which was granted pending resolution of the summary judgment motions.

While these motions were pending, about a month later, the Wears moved for a post-deadline expert extension, noting that the medical providers would not be prejudiced because trial was not to take place until March 2026, over a year away. The Wears argued the contentious discovery activity between the parties resulted in delays in scheduling depositions and that the stay imposed while Dr. Garcia sought interlocutory appeal also created delay to discovery efforts. On top of that, the Wears pointed to their reliance on the medical providers' silence by continuing to schedule

depositions without raising any concerns to them over the Wears' compliance with the expert deadline. Finally, they asserted that without depositions of the fact witnesses and defendants it was impossible for their experts to complete their expert reports or comply with the initial disclosures under Iowa Rule of Civil Procedure 1.500(2)(b).

To support their position, the Wears provided a timeline setting out the difficulties with obtaining discovery. And they pointed to the already filed certificates of merit and the curricula vitae (CV) of each of their experts—all served before the September disclosure deadline. Characterizing it as an "inadvertent mistake," the Wears urged that they "reasonably believed it was mutually understood that fact and party depositions would need to occur prior to the experts being able to opine" on expert topics. Then in a final reply to the medical providers' resistance to the Wears' expert deadline extension, one of the Wears' attorneys disclosed that a paralegal failed to calendar the September 9 deadline.

After submission without oral argument, the district court granted summary judgment in favor of the medical providers and denied the Wears' motion for an extension of time to provide expert disclosures. The Wears' petition was dismissed because, after considering the Wears' arguments, the district court found that the Wears had not substantially complied with the expert discovery deadline, had not established good cause for failing to do so, and thus, would be prohibited from having an expert witness testify at trial, which was fatal to their claims.

The Wears appeal. Dr. Garcia cross-appeals.

## II.  Standard of Review.

"We review a district court ruling on a motion for summary judgment for correction of errors at law." *Jahnke v. Deere & Co.*, 912 N.W.2d 136, 141 (Iowa 2018) (citation omitted). "A matter may be resolved on summary judgment if the record reveals only a conflict concerning the legal consequences of undisputed facts." *Wallace v. Des Moines Indep. Cmty. Sch. Dist. Bd. of Dirs.*, 754 N.W.2d 854, 857 (Iowa 2008). "We view the evidence in the light most favorable to the nonmoving party, who is entitled to every legitimate inference that we may draw from the record." *Nelson v. Lindaman*, 867 N.W.2d 1, 6–7 (Iowa 2015). But the nonmoving "party may not rest upon the mere allegations or denials in the pleadings, but the response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Iowa R. Civ. P. 1.981(5).

"We review a district court's interpretation of Iowa Code section 668.11 for errors at law." *Kirlin v. Monaster*, 19 N.W.3d 108, 113 (Iowa 2025). Our review of a district court's refusal to grant a departure from the requirements of section 668.11 is for abuse of discretion. *Id.* In that review, we give the district court "broad discretion in ruling on such matters, and the exercise of that discretion will ordinarily not be disturbed unless it was exercised on clearly untenable grounds or to an extent clearly unreasonable." *Id.* (citation omitted).

We review district court decisions related to motions to dismiss for correction of errors at law. *Crall v. Davis*, 714 N.W.2d 616, 619 (Iowa 2006).

## III.  Analysis.

**A.  The Wears' Appeal.** Iowa Code section 668.11(2) provides, "If a party fails to disclose an expert pursuant to subsection 1 . . . , the expert shall

be prohibited from testifying in the action unless leave for the expert's testimony is given by the court for good cause shown." In this context, "good cause" is defined as a

> sound, effective, truthful reason, something more than an excuse, a plea, apology, extenuation, or some justification for the resulting effect. The movant must show his failure was not due to his negligence or want of ordinary care or attention, or to his carelessness or inattention. He must show affirmatively he did intend to defend and took steps to do so, but because of some misunderstanding, accident, mistake or excusable neglect failed to do so.

*Wilson v. Shenandoah Med. Ctr.*, 21 N.W.3d 398, 405 (Iowa 2025) (cleaned up).

The guideposts for this issue are found in the October 2023 TSDP. That document confirmed an agreement that by September 9, 2024, the Wears would certify any expert witness's "name, subject matter of expertise, and qualifications, within the following time period . . . [i]n lieu of 668.11," along with serving reports required by Iowa Rule of Civil Procedure 1.500(2)(b). Rule 1.500(2)(d) requires expert disclosures to occur "at the times and in the sequence set forth in the court's trial scheduling order." Thus, not only were the section 668.11 expert disclosures not made, but the more extensive requirements of rule 1.500(2)(b) were not served by the deadline.

The Wears had the burden to demonstrate good cause for the lack of certification. *Sondag v. Ortho. Specialists*, 33 N.W.3d 154, 159 (Iowa 2026). So, we turn to the reasons the Wears gave for not meeting their deadline. The Wears' good cause argument boils down to: (1) the case was delayed by the stay of the proceedings requested by the medical providers, such that important depositions, despite diligent efforts to schedule them, could not be

taken prior to the deadline; (2) the TSDP, not section 668.11,[6] governed the disclosure deadline which made the type of disclosures more onerous; (3) trial was still a year out and so there was no prejudice to the medical providers by extending the deadlines; (4) counsel for the medical providers were silent about the deadline and were instead working to schedule critical depositions; (5) there was substantial compliance through the certificate of merit affidavits and CV filings; and (6) a calendaring error resulted in the Wears' counsel overlooking the deadline.

Next, we evaluate the reasons the Wears argue they have established good cause under section 668.11 using the factors set forth by our supreme court. There are four factors to be considered: (1) "the seriousness of the deviation," (2) "the defendant's prejudice or lack thereof," (3) "the actions of the defense counsel" while also "emphasiz[ing] that defense counsel are not their brother's keeper," and (4) "diligence by the plaintiffs in pursuing their case." *Id.* (cleaned up); *see also Wilson*, 21 N.W.3d at 406 (same). We consider each factor in turn.

1. *Seriousness of the deviation.* The Wears agreed to designate experts and provide rule 1.500(2)(b) disclosures by September 9. Although the medical providers moved for summary judgment at the end of November, the Wears did not ask for an extension of the September 9 deadline until December 16—so over three months went by with no action toward compliance with the deadline. The cases addressing this factor "have repeatedly held that delays of several months are considered serious

_____

[6] The Wears maintained in their appellate briefing that "this case [would be] a good vehicle for the Supreme Court to provide broader guidance to district courts about when it is appropriate to extend trial scheduling and discovery deadlines, whether they involve experts or fact discovery more broadly." To that point, we can only state that these cases are fact-intensive and broad guidance is often difficult.

deviations." *Wilson*, 21 N.W.3d at 406; *see also Sondag*, 33 N.W.3d at 159 (highlighting that a several-month delay operates as a "strong factor against finding good cause" if the party offers "no valid reason for the delay" (cleaned up)).

Even in the recent *Sondag* case, where good cause for the deviation was found, the supreme court considered the several-month delay as a serious deviation. 33 N.W.3d at 159. Thus, we find the same here, and this first factor weighs in favor of the medical providers.

But our inquiry is not complete as we turn to the Wears' reasons for the missed deadline. As in *Sondag*, the combination of reasons can move the serious deviation to one excused by good cause. *Id.* For example, the Wears indicated that they could not meet the deadline because they had been unable to hold depositions of the parties and then, even though numerous attorneys were involved for the Wears, it was alleged that there was a calendaring error. While a calendaring misunderstanding on its own is not good cause, it can be if part of the "combination" of factors. *Compare Stanton v. Knoxville Cmty. Hosp., Inc.*, No. 19-1277, 2020 WL 4498884, at *4 (Iowa Ct. App. Aug. 5, 2020) (noting that the filings showed the TSDP was not vague, but clear, as established by the exchanges between counsel showing the agreement to the deadline) *with Sondag*, 33 N.W.3d at 159 (setting out three "sound, effective, truthful" reasons). In the end, cases involving a good cause determination for failure to meet the guidelines under section 668.11 need to be addressed carefully and strictly on the facts provided. We continue to the second factor for our review.

2. *Defendants' prejudice or lack thereof.* The district court found that the medical providers "sustained some prejudice by virtue of the delay." There was, however, some forecast of a claim of prejudice as to the Wears

before the missed deadline. In the Wears' resistance to Dr. Garcia's motion to stay the proceedings, they warned of the difficulties related to scheduling depositions, the potential cancellation of ten depositions set for July and August, and concerns about completing expert discovery in time for the March 2026 trial date. The medical providers asserted there would be no prejudice from the potential two-to-four-month stay. Staring down a March 2026 trial date, from our lens, it is difficult to conclude that the medical providers would have been prejudiced by an extension of all parties' expert-witness-disclosure deadlines.

We do consider the importance of the section 668.11 deadline, because "leave of court for good cause shown is required to supplement a section 668.11 designation to add a new expert." *Wilson*, 21 N.W.3d at 407. And section 668.11 is to "provide certainty about the identity of experts" so that the defendants do "not have to spend time, effort and expense in defending a frivolous action." *Hantsbarger v. Coffin*, 501 N.W.2d 501, 504 (Iowa 1993).

So, the Wears' argument that they substantially complied with the scope of the statute does not take into account the importance of that section and how the medical providers might be prejudiced later if new experts are added. We do not find that the Wears' counsel substantially complied with the disclosures required under the TSDP here. It is well established that certificate of merit "works in tandem" with the expert designation, and the two requirements serve different purposes. *Struck v. Mercy Health Servs.-Iowa Corp.*, 973 N.W.2d 533, 541 (Iowa 2022). In our cases, "we explained that nothing in the certificate of merit shows the plaintiffs intended to use the same professional as their expert witness and the certificate-of-merit statute explicitly states the plaintiff shall comply with the requirements of

section 668.11 and all other applicable law governing certification and disclosure of expert witnesses." *Jackson v. Cath. Health Initiatives, Inc.*, No. 22-1911, 2023 WL 5602863, at *2 (Iowa Ct. App. Aug. 30, 2023) (cleaned up).

Still, our supreme court has held that if lack of prejudice is "the only consideration in the plaintiffs' favor," then "it was not enough by itself" when determining good cause. *Kirlin*, 19 N.W.3d at 114 (noting after resolution of an appeal, the confusion over the expert deadlines with the case now reinstated, provided sufficient good cause to excuse late disclosures).

In the end, we find this factor weighs in favor of the Wears, as while there may be some concerns about moving expert disclosures down the road, it would not be overwhelming if the parties were encouraged to move the case along, which trial courts are very adept at handling. *See Morales v. Miller*, No. 09-1717, 2011 WL 222527, at*6 (Iowa Ct. App. Jan. 20, 2011) (finding the "additional work required of defense counsel and defense experts" might cause minimal prejudice, but other factors weighed more heavily to find a lack of good cause, such as the thirteen-month delay in disclosure). Prejudice is minimal under the record established here.

3. *Actions of defense counsel.* This factor weighs in favor of the medical providers. Silence about another party's deadline should not form the basis of a good cause finding, particularly as to the facts presented here. In the category that you are not your "brother's keeper," there is simply no duty to alert opposing counsel to their statutory and agreed-upon obligations. *See Wilson*, 21 N.W.3d at 408 (noting that to do so would be rewriting section 668.11 and potentially interfering with opposing counsel's ethical obligations to their clients). This factor simply requires "more than mere silence." *See Kirlin*, 19 N.W.3d at 118 (noting the opposing counsel's

13

correspondence addressing the lack of a date certain for experts did not support the no-good-cause finding).

We last address the diligence by the Wears' counsel.

4. *Diligence by plaintiffs' counsel.* On this factor, the district court observed that the Wears' counsel could have answered the expert interrogatory with more detail, provided the section 668.11 designation, and asked for additional time to provide the rule 1.500 reports. But that would have required being aware of the deadline. As the Wears' counsel established, there was an error in the calendaring of the deadline.

In reviewing the circumstances that led to the failure of the disclosures, we do not find a lack of diligence by the Wears' counsel. As in *Sondag*, the supreme court found, based on a combination of factors that constituted "excusable neglect," the serious deviation there was excused. 33 N.W.3d at 159–60. The combination of factors included counsel's involvement in a complex multiweek trial during the discovery period while one of the lead attorneys was hospitalized, compounded by a docketing software error that calculated an incorrect deadline. *Id.* The Wears ask that we similarly consider their excuses to represent a good cause finding. We note the district court did not have the benefit of our supreme court's version of *Sondag* but instead relied upon our court's vacated version.[7]

As the Wears described the discovery slog, depositions were originally scheduled for early 2024 but discovery disputes prevented those from occurring. Then, the issue with Dr. Garcia and her challenge to service further stalled the discovery progress from June until August. Dates for

---

[7] *See Sondag v. Ortho. Specialists, P.C.*, No. 23-2113, 2025 WL 271622 (Iowa Ct. App. Jan. 23, 2025), *vacated*, 33 N.W.3d 154 (Iowa 2026).

depositions were reserved for November and December and some were set, but discovery issues again arose and then depositions were tentatively rescheduled for December and January. But, the day before Thanksgiving, the medical providers filed motions for summary judgment seeking dismissal of the Wears' claims. At this point, although there were no expert disclosures provided, the Wears had filed certificates of merit and provided CV filings for the experts that were to testify, so the medical providers had basic knowledge about the experts and their qualifications. Yet, in the Wears' May 2024 answer to an interrogatory requesting expert information, they only offered an assurance that the information would be forthcoming.

The medical providers contend that the district court correctly excluded the Wears' experts given the lack of any compliance related to the section 668.11 expert disclosure deadline and the failure to show good cause for the failure. The medical providers first emphasize that the Wears do not—and have never—disputed that they missed the September 9 deadline. Certainly, the Wears did not ask for or file a request for an extension until after the deadline passed. And under the TSDP, the deadline was clear and the medical providers argue the Wears' excuses amount to no more than their counsel's "negligence or want of ordinary care or attention, or . . . carelessness or inattention." (quoting *Donovan v. State*, 445 N.W.2d 763, 766 (Iowa 1989) (citation omitted)).

The district court commented that the Wears compounded the discovery woes by wanting "ten witnesses deposed in a particular order." Likewise, the court gave the calendaring error little weight, noting the Wears had multiple counsel representing them from two law offices. The medical providers contend that the discovery depositions "would have gone forward in April and May (when they were originally noticed) if it had not been for

[the Wears'] discovery violations, which required rescheduling the depositions." These facts and the Wears' counsels' failure to keep track of the deadline weigh against the good-cause determination.

"Because section 668.11 is a procedural or remedial statute, it is subject to liberal interpretation," meaning "[o]nly substantial, rather than strict, compliance is required." *Jackson*, 2023 WL 5602863, at *2 (cleaned up). Now with guidance about good cause from *Sondag* (three combined reasons, including one counsel's hospitalization) and *Kirlin* (delay and confusion over actual deadlines), we find that the Wears met their burden to show good cause for the serious deviation in service of the section 668.11 disclosures. Although, taken separately, the Wears many reasons for missing the deadline might not constitute good cause, in combination they demonstrate "sound, effective, truthful reason[s]" that, taken together, represent excusable neglect. *See Sondag*, 33 N.W.3d at 158 (citation omitted).

Here, not only did the Wears have to produce section 668.11 disclosures, the disclosure requirement was more onerous with the additional requirement of rule 1.500(2) reports. As the Wears note, under section 668.11(1)(a), given the agreed-upon March 2026 trial date, the default deadline for expert disclosures would have fallen on September 2, 2025, but here, the parties accelerated the expert disclosures. The TSDP specifically noted that the deadlines were "in lieu of 668.11." While there were discovery disputes, the Wears' counsel did work diligently to obtain the necessary depositions to comply with the TSDP. The stay of the case at a time when those depositions could have been completed, along with the calendaring fiasco, created an unusual combination of circumstances that work toward our determination that there was good cause to extend the expert disclosure deadlines.

16

This case involves the question of whether the district court's discretion "was exercised on clearly untenable grounds or to an extent clearly unreasonable." *Wilson*, 21 N.W.3d at 404 (citation omitted). We find that the enumerated factors applied to the current caselaw, which was not available to the district court at the time of its decision, require that we reverse the dismissal of the district court for abuse of discretion.

**B. Dr. Garcia's Cross-Appeal**. Because we have reversed the grant of the motion for summary judgment related to the expert disclosure deadline issue, we have one final matter to address. Dr. Garcia also moved for summary judgment seeking dismissal of the action against her because of the Wears' failure to properly accomplish service of the original notice and petition within the ninety-day deadline under Iowa Rule of Civil Procedure 1.302(5). Service was accomplished sixty-one days late.

In April 2024, the district court denied Dr. Garcia's summary judgment motion, finding:

> In considering the facts of this particular case the court determines that [the Wears] failed to serve Dr. Garcia within the 90-day time limit prescribed under the Rules of Civil [P]rocedure. Under other circumstances the court might dismiss the case against this defendant, without prejudice. Their argument that serving an employee of the hospital or clinic where the doctor worked at one time fails to convince the court service was proper. However, [the Wears] did immediately try to serve Dr. Garcia after filing the petition. And, though no one apparently read the Answer filed by Dr. Garcia, [the Wears] did immediately serve her at her home in another state when they were alerted by the motion for summary judgment. Their neglect was tossing aside the Answer as if it were unimportant. This, however, should not prevent [the Wears] from pursuing their claims against Dr. Garcia.
>
> The court concludes that [the Wears] have shown good cause to prevent a dismissal of their claims against Dr. Garcia. Therefore, the motion for summary judgment will be overruled.

Iowa Rule of Civil Procedure 1.302(5) provides a timeline to accomplish service:

> If service of the original notice is not made upon the defendant, respondent, or other party to be served within 90 days after filing the petition, the court, upon motion or its own initiative after notice to the party filing the petition, shall dismiss the action without prejudice as to that defendant, respondent, or other party to be served or direct an alternate time or manner of service. If the party filing the papers *shows good cause for the failure of service*, the court shall extend the time for service for an appropriate period.

(emphasis added).

We apply a good cause standard for justifying the failure to timely serve the original notice and petition once a lawsuit is filed. *See Rucker*, 828 N.W.2d at 599. The "good cause" standard requires that we "consider[] all the surrounding circumstances, including circumstances that would make it inequitable for a defendant to successfully move to dismiss." *Id.* at 601.

Reviewing that standard, the district court noted:

> [the Wears] took affirmative action to serve Dr. Garcia immediately after filing the petition. They requested the Lee County Sheriff to serve the Original Notice and Petition upon her at the SEIRMC campus in Fort Madison. Unfortunately for them, they failed to determine whether she still worked at that location. Further, they never learned where she lived at the time. The process server is not to blame in this instance. However, the question remains, whether Plaintiffs should be excused for good cause.

Here, considering the circumstances, we find that the Wears did attempt timely service at Dr. Garcia's previous place of employment, which was accepted by an employee there. And Dr. Garcia did answer the petition. Although she raised the failure to timely serve as an affirmative defense, which was overlooked by the Wears, once the summary judgment motion was

filed and the issue was apparent to the Wears, they immediately asked for an extension and perfected personal service on Dr. Garcia.

In *Wilson v. Ribbens*, our supreme court stated that good cause likely exists:

> when the [plaintiffs'] failure to complete service in timely fashion is a result of the conduct of a third person, typically the process server, the defendant has evaded service of the process or engaged in misleading conduct, the [plaintiffs have] acted diligently in trying to effect service or there are understandable mitigating circumstances . . . .

678 N.W.2d 417, 421 (2004) (quoting 4B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1137, at 342 (3d ed. 2002)).

Because of the Wears' affirmative actions in their attempts at proper service and because we do not employ a narrow view of the good cause standard, we conclude the district court did not err by concluding that good cause existed for failing to timely serve the original notice and petition on Dr. Garcia. *See Rucker*, 828 N.W.2d at 603 ("Because the substantive rights of a plaintiff can be at stake through the application of a statute of limitations, it is important that the good-cause standard under rule 1.302(5) not be applied too narrowly.").

## IV. Conclusion.

We conclude the Wears met their burden to show good cause, and we reverse the district court's dismissal of their lawsuit. We also conclude good cause existed to excuse the Wears' failure to timely serve Dr. Garcia. We remand this case for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**