## BOOTH v. CROCKETT, District Judge et al.

No. 6941.   Decided October 14, 1946.   (173 P. 2d 647.)

See 50 C. J., Process, sec. 98; 42 Am. Jur. 49. Construction of "usual place of abode" in service of process statutes, note 127 A. L. R. 1267.

*Ned Warnock,* of Salt Lake City, for plaintiff.

*Skeen, Thurman & Worsley,* of Salt Lake City, for defendants.

WOLFE, Justice.

Mandamus to compel J. Allen Crockett, as Judge of the Third Judicial District Court, to take jurisdiction in a case entitled "Vilow C. Booth v. Frank Fairbanks and Dr. E. B. Fairbanks."

The original case arose as a result of an automobile accident in which, it was alleged, Frank Fairbanks was negligent and caused injury to the plaintiff and damage to his property. The defendant, Frank Fairbanks, on December 5, 1945, was 18 years of age and had enlisted in the United States Navy. Prior to that time he had lived with his mother and father and had had no other home. On December 5,

1945, he went to the United States Naval Training Depot at San Diego, California. The evidence shows that he was at all times in communication with his parents. On December 13, 1945, a summons for Frank Fairbanks was left with his mother, Mrs. E. B. Fairbanks, at the Fairbanks home. The father of the boy wrote to him and advised him of the suit which had been filed and of the summons which had been left at the home.

The defendants in the original case moved to quash the service on the grounds that the Fairbanks home was not Frank Fairbanks' "usual place of abode" and that, therefore, no service was made on him. The motion to quash was granted by Judge Crockett.

The sole question in the case is: Was the Fairbanks home on December 13, 1945, Frank Fairbanks' "usual place of abode" within the meaning of Section 104-5-11, U. C. A. 1943, the pertinent parts of which read as follows:

"Manner of Serving Summons. The summons must be served by delivering a copy thereof as follows:

\* \* \*

"(8) In all other cases, to the defendant personally, or by leaving such copy at his usual place of abode with some suitable person of at least the age of fourteen years."

The courts vary widely in their interpretation of the phrase "usual place of abode" in statutes providing for substituted service of process. See Annotation at 127 A. L. R. 1267 and 42 Am. Jur. 46.

The recent cases of *Kurilla* v. *Roth*, August, 1944, 132 N. J. L. 213, 38 A. 2d 862, 864, and *McFadden* v. *Shore*, D. C., March 1945, 60 F. Supp. 8, 9, involved fact situations indistinguishable in legal effect from the original case here.

The New Jersey court in the Kurilla case said in part:

" 'Abode' is one's fixed place of residence for the time being—the place where a person dwells. One's 'usual place of abode,' in the statutory view, is the place where one is 'actually living' at the time when service is made."

"Of course, a person may enter one of the armed services under conditions that permit him to retain his preexisting place of abode

within the meaning of this Act; but such is not the case here. Upon defendant's induction into the armed forces, his mother's home ceased instanter to be his place of abode. It does not matter in this regard that some of his clothing and personal belongings remain there, or that he intends to return to his mother's home, wherever it may be, as soon as his miltary service is terminated. While filial love binds him to his mother wherever she may be, and her home is his for lack of another, it is no longer his 'actual place of abode' within the intendment of the statute."

The New Jersey court ordered the service quashed.

*McFadden* v. *Shore,* supra, was decided by a Federal District Court in Pennsylvania. The court held the defendant's "usual residence" was his "usual place of abode" and held substituted service was made by leaving the copy of the summons at the home of the sailor defendant's parents.

This court in *Grant* v. *Lawrence,* 37 Utah 450, 108 P. 931, 933, Ann. Cas. 1912C, 280, interpreted the phrase "usual place of abode" and gave it the restricted meaning given by the New Jersey court in the Kurilla case. In the Lawrence case this court said:

"Usual place of abode is sometimes referred to as being synonymous with domicile or permanent residence. In our judgment there is a broad distinction between domicile and usual place of abode as the latter term is used in our statute. Such also seems to be the conclusion reached by the authorities, as is demonstrated by the following cases: In *Mygatt* v. *Coe,* 63 N. J. L. 510, 512, 44 A. 198, 199, the Supreme Court of New Jersey, in construing a statute authorizing substituted service in terms similar to ours says:

" 'The Statute does not direct service to be made, at the "residence" of the defendant, but at his dwelling house or usual place of abode, which is a much more restricted term. As was said in *Stout* v. *Leonard,* 37 N. J. L. 492, many persons have several residences which they permanently maintain, occupying one at one period of the year and one at another period. Where such conditions exist, a summons must be served *at the dwelling house in which the defendant is living at the time when service is made.'*

"That is, where a person abides—lives—at the particular time when the summons is served, constitutes his usual place of abode. A similar question was before the Supreme Court of the United State in *Earle* v. *McVeigh,* 91 U. S. [503] at page 508, 23 L. Ed. 398, where it is held that, where service of summons is required to be made at the 'usual

place of abode' such service, in order to constitute legal service, must be made at the defendant's 'then present residence.' *In other words, at the place where the defendant then lives or abides.*" (Italics ours.)

We think the interpretation given the phrase "usual place of abode" in *Grant* v. *Lawrence,* supra, is correct. We must assume the legislature used that phrase advisedly. Had it meant "residence" or "domicile" it would have used one of those terms as it must have been well aware of the meanings which the courts have given those words. The usual place of abode of a person is where he usually lives or abides.

Under the rule of *Grant* v. *Lawrence,* supra, the question in this case becomes: Was Frank Fairbanks *living* at his parents' home on December 13, 1945, when the copy of the summons was left there?

Frank joined the navy and eight days before the copy of the summons was left at the Fairbanks home departed from this state to start training at a navy base in California. Before entering the navy and departing for duty, his ordinary activities of living were centered around and focused at his parents' home. He usually ate and slept there. He returned to his parents' home after short trips. His clothes and personal belongings were there and he was tied to that home by ties of blood and affection. He was ordinarily physically present at that place or was expected there in a short time. In short, Frank was living at the Fairbanks home prior to his departure for navy service.

After departing for naval service, Frank's ordinary activities of living were no longer centered around the Fairbanks home. He no longer usually ate or slept there. He was no longer usually physically present at the home or shortly expected. His duties required him to be at his station, which at the time the copy of the summons was left at the home, was at a navy base in another state. The facts that many of his personal possessions remained at the home and that the ties of blood and affection continued and that he frequently corresponded

with persons at the home are to be considered in determining where he was "living," but in this case those facts are greatly outweighed by his physical departure from the place for the purpose of undertaking naval duty at a distant base for apparently an indefinite period. We think it clear that Frank Fairbanks was not "living" at the Fairbanks home when the copy of the summons was left there.

We do not mean that when a person departs from his usual place of abode temporarily for business, pleasure or cultural purposes he has ceased living at his usual place of abode. Living at a place does not mean that a person must be always there. But if the break in the continuity of his activities which constitute living at what was his home is so marked, such as an indefinite tenure of military or any duty away from that home or a departure for a prolonged though definite term of study or where he has distinctly taken up a new station for business purposes, even though he may have his belongings at his former place of abode or keep in close correspondential touch with it, the place where he lived would be not his present usual place of abode but a former place of abode. Such a marked severance with the place at which he abided means that he no longer usually abides there.

The fact that Frank actually did receive the summons has no bearing whatever on the question of whether or not the Fairbanks home was his "usual place of abode." Of course, the intent of the legislature in specifying that the copy be left at the defendant's "usual place of abode" was to provide for the summons to be left at a place where the defendant would in all probability get the summons and so receive personal notice of the pending action. But what is a person's "usual place of abode" must be determined from the circumstances existing at the time the substituted service is attempted to be made and not by events transpiring thereafter.

From the facts and circumstances of this case, we hold the Fairbanks home was not Frank Fairbanks' usual place of abode" on December 13, 1945, and that there-

fore, Judge Crockett ruled correctly in granting the motion to quash service in the original case.

The alternative writ of mandamus is recalled and the action is dismissed. Costs to the defendants herein.

LARSON, C. J., and McDONOUGH, PRATT, and WADE, JJ., concur.