JACK A. KING, Plaintiff, v. ROLAND EDWARD FISHER, Defendant.

(*September* 29, 1955.)

LAYTON, J., sitting.

*Louis Goldstein* for Plaintiff.

*Henry R. Horsey* (of Berl, Potter and Anderson) for Defendant.

Superior Court for New Castle County, No. 683, Civil Action, 1954.

LAYTON, J.:

Defendant, an officer in the regular Navy, was involved in an automobile accident in Virginia on August 8, 1953. He was then stationed in Norfolk. From then until November 21, 1953, he made frequent week-end visits to his family's home in Claymont, Delaware, where his personal effects were stored, where he listed his address with the Bureau of Naval Personnel, where he obtained his automobile driver's license and where he filed his Federal Income Tax returns. Defendant's father and mother were not long time residents of Delaware, having only moved here from Pennsylvania in late 1952 or early 1953.

On November 21, 1953, he married a girl who lived in and worked at the Memorial Hospital in Wilmington, and from that day until December 26, 1953, they rented and lived in an apartment in Norfolk.

On December 26, 1953, he was granted a five-day leave prior to five months' overseas service. The apartment was given up. Three days of their vacation were spent in Claymont and two at his wife's home in New Jersey. From January 1, 1954, through May 29, 1954, defendant was on foreign duty with his ship, and his wife returned to Wilmington and resumed her former job, living at the nurses' home in the Memorial Hospital.

During this period, defendant filed a Federal Tax return stating that his address was Claymont, Delaware.

On his return from overseas on May 29, defendant was granted 15 days leave, of which 11 days were spent at Claymont, one night with his in-laws in New Jersey and two days at Wildwood.

On July 4th (what happened from June 15 to July 4 is not disclosed) defendant and his wife rented an apartment in Portsmouth, Va., and were living there on August 6th, at which time

service was attempted to be made on defendant at his parents' home in Claymont. As of this latter date, defendant's address was listed on the current roster listing of officers of the U. S. S. *Newport News* as 802 Halifax Ave., Portsmouth, Va.

In *Alder v. Hudson,* 9 *Terry* 489, 1954, 106 *A.* 2d 769, Judge Carey had a somewhat analogous situation although based on less complex facts. There, defendant was stationed with the Air Force in Minnesota. Prior to his enlistment at the age of 20, he had always lived with his family in Delaware. He was unmarried. He visited his parents twice yearly on leave. Every inference suggested that, on his discharge, he would return to Delaware to live. Judge Carey adopted the Federal Rule that the mere fact of entry into Military Service is not sufficient to demonstrate an intention of abandoning the former usual place of abode and held that service upon defendant by leaving copies of the process, etc., at his father's home in Delaware was valid.

The facts here suggest a different conclusion. Service with our armed forces frequently results in a somewhat nomadic existence as compared with the ordinary walks of life. Assignment to a station, camp or ship compels the physical presence of military personnel at spots all over the country, even the world, for fixed periods but does not necessarily result in a change of their domicile. I take it that the words "usual place of abode" were not intended to refer to domicile and that Judge Carey so held, at least inferentially, in the *Hudson* case cited above.

Assume an officer domiciled in Delaware, stationed with his ship in the Brooklyn Navy Yard and living with his wife for six months in Brooklyn. His home is listed with the Bureau of Naval Personnel as Delaware, his driving license is granted there and he files Federal Tax returns from that State. Where is his usual place of abode? The armed services require the listing of some sort of permanent address for their personnel which can frequently only be accomplished by naming the parents' home. The obtaining of a driver's license is a question of expediency. Once granted by Delaware, it is probably far easier to re-obtain

it from that State than go through the complicated process of applying in a strange State together with the necessity of taking new driver's examinations, etc. The selection of Delaware as a place from which Federal Income Tax returns are filed is not, of itself, of great importance. But the fact of continued residence with a wife in Brooklyn is of substantial significance. To hold under the facts assumed that the officer does not have his usual place of abode in Brooklyn is tantamount to holding that the words "usual place of abode" mean domicile, the contrary of which is true.

■ The only difference between the facts in the hypothetical case and of the case at bar is the length of residence where the ship was stationed. But we must take the facts as of the approximate time of service of process. At that time and for a month prior thereto, this defendant and his wife had a bona fide residence in Portsmouth and there he would undoubtedly remain for months, possibly for a year or more. After that, he might be assigned to San Diego, Boston or Hawaii, and in each of these places, except when on active duty, he would make his home with his wife, receive his mail, attend church, rear children and, in general, go about the ordinary and usual business of living.

My conclusion, then, is that defendant had his usual place of abode on August 6, 1954, in Portsmouth, Va.

Motion to quash service and to dismiss granted.