JANET WHETSEL, Appellant, v. CHARLES E. GOSNELL, Appellee.

(*April* 26, 1962.)

SOUTHERLAND, Chief Justice; WOLCOTT, Justice, and TERRY, President Judge, sitting.

*Thomas Herlihy, Jr., Joseph M. Kwiatkowski* and *Thomas Herlihy, III,* for appellant.

*John P. Sinclair* (of Berl, Potter and Anderson) for appellee.

Supreme Court of the State of Delaware, No. 57, 1961.

TERRY, P. J.:

This tort action was brought in the Superior Court of the State of Delaware by plaintiff, Janet Whetsel, against defendant, Charles E. Gosnell, for injuries sustained in an automobile collision occurring on November 12, 1958, in the City of Wilmington. The plaintiff alleged that the accident was caused by the negligent driving of the defendant. Service of process was made on defendant on April 26, 1960, pursuant to Delaware Superior Court Rules Civil Procedure, Rule 4(f) (1) (I) *Del. C. Ann.* at defendant's grandparents' house in Wilmington, Delaware.

Subsequently, defendant moved to dismiss plaintiff's action because of insufficiency of service of process, pursuant to Delaware Superior Court Rules Civil Procedure, Rule 12(b) (5). In support of his motion, defendant filed an affidavit with the Superior Court stating that on the date service of process was made, he was a midshipman at the United States Naval Academy, Annapolis, Maryland, and was a member of the class of 1963, and intends to remain in the military service and not return to Delaware to live. Prior to entrance in the Naval Academy defendant had resided with his grandparents in Wilmington, at whose residence and upon whom service of process was made. Defendant therefore contended that service at his grandparents house was not service at his usual place of abode pursuant to Rule 4(f) (1) (I), and was thus insufficient. In providing for substituted service, this Rule states in part:

"* * * Service of summons shall be made as follows:

"(I) Upon an individual other than an infant or an incompetent person by delivering a copy of the summons, complaint and affidavit, if any, to him personally or by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein * * *."

The Superior Court held that pursuant to this Rule, defendant's usual place of abode was not at the residence of his

grandparents. Defendant's motion to dismiss for insufficiency of service of process was therefore granted.

The sole issue before this Court is the meaning to be attached to the term "usual place of abode" as it appears in Rule 4(f) (1) (I), *supra*. Plaintiff contends that this phrase is equivalent to domicile. If that is true, valid service of process was obtained at the home of defendant's grandparents in Wilmington. Defendant on the other hand argues that at the time service was made, the United States Naval Academy in Annapolis, Maryland, was his usual place of abode.

In setting this matter straight, we must first examine the jurisprudence of Delaware. Unfortunately, it is conflicting. While this Court has never decided the question, the Superior Court has been faced with an interpretation of its Rule 4(f) (1) (I), *supra*, on two previous occasions. The case of *Allder v. Hudson*, 9 *Terry* 489, 48 *Del.* 489, 106 *A.* 2d 769, 46 *A. L. R.* 2d 1237 (1954), relied upon by plaintiff, involved the allegation that defendant had no dwelling house or usual place of abode in Delaware when service of process was made at the home of his parents. There, the defendant was stationed with the Air Force in Wisconsin. Prior to his enlistment at the age of twenty, he had always lived with his parents in Delaware. He was unmarried and visited his parents twice yearly on leave. While home on leave, an accident occurred upon which subsequent suit was brought against him. In ruling that service of process was valid, the able Trial Judge below noted that the question was one of first impression in Delaware. He further indicated that the Federal Courts have applied the rule that one's usual place of abode is not changed by entry into military service. Thus, absent an affidavit executed by defendant to show that he lacked an *animus revertendi* with regard to his parent's home, defendant's motion to dismiss was denied. The Court thus laid great stress in the importance of an affidavit to controvert a presumption of an *animus revertendi*.

The later Delaware case of *King v. Fisher*, 10 *Terry* 374, 117 *A.* 2d 76 (1955), decided in the Superior Court, involved a married naval officer whose parents resided in Claymont, Delaware. Defendant was involved in an automobile accident and an attempt was made to serve him at the home of his parents in Claymont. At the time of said service defendant was stationed at Newport News, Virginia, and was living with his wife in a rented apartment in Portsmouth, Virginia. Plaintiff argued that Claymont was still the defendant's usual place of abode because many of his personal effects were stored there, and it was listed on his military records as his permanent address. His drivers license and federal income tax returns likewise reflected that address. In dismissing plaintiff's action for insufficiency of service of process, the Court held:

"Service with our armed forces frequently results in a somewhat nomadic existence as compared with the ordinary walks of life. Assignment to a station, camp or ship compels the physical presence of military personnel at spots all over the country, even the world, for fixed periods but does not necessarily result in a change of their domicile. * * * the words 'usual place of abode' were not intended to refer to domicile * * *." *King v. Fisher*, 117 *A.* 2d 76 (1955).

Thus the conflict in our jurisprudence was posed. In *Allder*, *supra*, the rationale of the Court revolved around an *animus revertendi*. Such a concept, however, is an element related to *domicile*. We therefore can find no place for it with regard to the term "usual place of abode."

The theory enunciated by *King*, *supra*, is not without precedent. A New Jersey Court observed that definite legal distinctions exist between the terms "usual place of abode," "residence," and "domicile." In so noting, the Court held:

"The phrase 'usual place of abode' has a well-defined meaning in the law and is different from the words 'residence' and 'domicile' when applied to service of process. The words

'usual place of abode' is, of the three, the most restricted in meaning. * * * Chancellor Runyon said: 'Residence is not domicil, though domicil is the legal conception of residence. Domicil is residence combined with intention. It has been well defined to be a residence at a particular place, accompanied with positive or presumptive proof of an intention to remain there for an unlimited time. A man can have but one domicil for one and the same purpose at any one time, though he may have numerous places of residence. His place of residence may be and most generally is, his place of domicil but it obviously is not by any means necessarily so, for no length of residence without the intention of remaining will constitute domicil.' * * * Going one step further, 'usual place of abode' is the place where the defendant is actually living at the time of the service. The word abode means one's fixed place of residence for the time being when the service is made. Thus, if a person have several residences, he must be served at the residence in which he is actually living at the time service is made." *Eckman v. Grear*, 187 *A.* 556, 14 *N. J. Misc.* 807 (1936).

In a later New Jersey case, the Supreme Court of that State enunciated the following rule:

"Upon defendant's induction into the armed forces, his mother's home ceased instanter to be his place of abode. It does not matter in this regard that some of his clothing and personal belongings remain there, or that he intends to return to his mother's home, wherever it may be, as soon as his military service is terminated. While filial love binds him to his mother wherever she may be, and her home is his for lack of another, it is no longer his 'actual place of abode' within the intendment of the statute." *Kurilla v Roth*, 132 *N. J.* 213, 38 *A.* 2d 862 (1944).

In the case at bar, defendant has relied heavily on the fact that he has executed an affidavit attempting to show that he lacks an *animus revertendi* with regard to the resi-

dence of his grandparents. We are of the opinion, however, that this affidavit, executed for very obvious reasons of self-interest, cannot avail the defendant anything except to show that he is presently a student at the United States Naval Academy. The other allegations of the affidavit are immaterial for our present purpose. The status of the defendant is no more unique than that of any other college student away from home. It is sufficient to say that at the time service of process was attempted upon defendant, his usual place of abode was at the Naval Academy. Thus during the school year the usual place of abode of any student, while away at school is at that school.

Likewise, a man in the armed forces has his usual place of abode at the military installation where he is stationed, regardless of whether he is married or intends to return to his former residence at the conclusion of military service. In all such cases we give the term "usual place of abode" its narrowest and most restricted meaning, *i.e.*, the place where a person is physically residing for other than the narrow, limited purpose of a vacation or other short, temporary absence. It is in other words, something other than a temporary stopping or abiding place, it must be the place where the defendant is usually to be found. "Usual place of abode" is thus a purely physical circumstance. It is unlike the concept of domicile which connotes a state of mind, an *animus revertendi*.

In view of our decision here, we are constrained to state that *Allder, supra,* must be overruled.

For the reasons assigned, the judgment of the Superior Court dismissing plaintiff's action for insufficieny of service of process is therefore affirmed.