Helen A. HRON, Appellee,

v.

Norbert E. RYAN, Appellant,

and

Robert J. Schemmel and Joseph Schemmel, Defendants.

Rose A. HRON, Appellee,

v.

Norbert E. RYAN, Appellant,

and

Robert J. Schemmel and Joseph Schemmel, Defendants.

Nos. 53203, 53204.

Supreme Court of Iowa.

Feb. 11, 1969.

Miller, Pearson & Gloe, Decorah, for appellant.

O'Donohoe & O'Connor, New Hampton, for appellees.

LeGRAND, Justice.

This is an interlocutory appeal under rule 332, Rules of Civil Procedure, from an order overruling the special appearance of defendant, Norbert E. Ryan. The other defendants are not parties to this appeal, and we discuss the case as though Norbert E. Ryan were the sole defendant. The two cases were consolidated for purposes of this appeal. They raise identical issues.

Plaintiffs separately brought action for personal injuries sustained in a three-car accident which occurred on March 6, 1966. When suit was started, defendant was a member of the United States Army, stationed in Karlsrude, Germany. Substituted service of original notice was made upon him by delivering a copy of said notice to his father, Clement Ryan, at the family home in Howard County, Iowa. The return of service by Percy Haven, sheriff of Howard County, shows the following:

"* * * and on 6 day of March, 1968, I served the same [original notice] on Norbert E. Ryan * * * at his dwelling house or usual place of abode * * * by * * * delivering to Clement Ryan personally (a person over the age of 18 residing therein) a true copy thereof."

This service is the basis for this appeal. It was made under rule 56(a), R.C.P., which provides in pertinent part as follows, "Original notices are 'served' by delivering a copy to the proper person. Per-

sonal service may be made as follows: (a) Upon any individual aged eighteen years or more * * * by serving at his dwelling house or usual place of abode, any person residing therein who is at least eighteen years old * * *"

We must decide if the place where service was made was defendant's dwelling house or usual place of abode under this rule.

Defendant was inducted into military service on April 13, 1966. He was then 19 years of age, single, and had always lived with his parents in Howard County, Iowa. All his personal belongings were kept at his father's home. He had established no other place of abode, unless his military station should be so considered. He admittedly intended to return to Iowa and live with his parents upon completion of his military obligation. It may be mentioned parenthetically that at the time of hearing on the special appearance he had already been discharged and was again living in Howard County.

The special appearance raises two issues: first, that while the family home may have continued to be his domicile while he was in military service, it was not then his dwelling place or usual place of abode; and, second, even if it were, the service made violates due process because it was not calculated to give him reasonable opportunity to appear and defend the action against him.

After hearing the trial court overruled the special appearance and this appeal results.

Courts have been unable to agree on the meaning of dwelling house or usual place of abode when used in a rule providing for substituted service of process. Hysell v. Murray, U.S.D.C., S.D. Iowa, 28 F.R.D. 584, 587; Bull v. Kistner, 257 Iowa 968, 972, 135 N.W.2d 545, 548; Annotations, 46 A.L.R.2d 1239.

A number of states require some degree of physical presence or "continuity of activities" at the place where service is sought to be made.

Kurilla v. Roth, 132 N.J.L. 213, 38 A.2d 862, 864, 865, limited the usual place of abode to a place "where one is 'actually living' * * * [a] fixed place of residence for the time being." In that case substituted service was held invalid where made at the family home of a soldier-defendant who was single, had lived with his mother, and intended to return there upon his discharge from military service.

The Kurilla opinion put much reliance on a previous New Jersey decision in Eckman v. Grear, 14 N.J.Misc. 807, 187 A. 556, 558, but that case recognized a rebuttable presumption in favor of holding the father's abode to be that of his minor son in military service. The Grear case simply held the presumption was rebutted by a showing the son had (1) enlisted; (2) disposed of all of his belongings; and (3) had no intention of returning to that place after completing his military service.

A similar result was reached in Booth v. Crocket, 110 Utah 366, 173 P.2d 647, 649. There the defendant was an unmarried minor who intended to return to his parents' home after fulfilling his military obligation and who had established no other place of abode. He had left all of his belongings with his parents. The court recognized these were matters to be considered, as were "the ties of blood and affection", but held these circumstances were outweighed by defendant's "physical departure from the place for the purpose of undertaking [military] duty at a distant base for apparently an indefinite period." See also Whetsel v. Gosnell, 4 Storey, Del., 519, 181 A.2d 91, 94.

We have never squarely faced this problem. Both parties cite Ruth & Clark, Inc. v. Emery, 233 Iowa 1234, 11 N.W.2d 397, but that case was decided on the statute in effect prior to the adoption of our present rules. There service was to be made at defendant's usual place of *residence*, which we held to mean *in the county of his legal*

*residence or domicile.* We do not find that opinion helpful under the wording of our present rule 56(a), R.C.P.

Our nearest approach to the question is found in Bull v. Kistner, supra, where substituted service was made upon an Iowa defendant confined in a Federal penitentiary in Sandstone, Minnesota. There at page 972 of the Iowa Reports, at page 548 of 135 N.W.2d we said, "We agree * * 'usual place of abode' is a more restrictive term than residence or domicile, but we do not agree it is so restrictive as to exclude entirely a consideration of volition * * *.

"* * * It is repeatedly stated each case depends on its own facts."

This same thought was expressed in Hysell v. Murray, supra, 28 F.R.D. at page 587, where the court said, "* * * In effect each case must turn upon its own factual situation." Even the Kurilla case recognizes this principle, for at page 865 of 38 A.2d the New Jersey court said, "Of course a person may enter * * * armed services under conditions that permit him to retain his pre-existing place of abode * * * but such is not the case here." And in the Booth case the same thought is expressed: Not every causal or temporary absence from an established home for business, pleasure or cultural purposes would terminate the relationship, but where a break in the continuity of his activities centering around the place is marked that place ceases to be his present usual place of abode and becomes a former place of abode.

It is apparent no rigid formula may be adopted to decide what circumstances, without exception, will cause one's dwelling house or usual place of abode to lose that status. Karlsson v. Rabinowitz, 4 Cir., 318 F.2d 666, 668. It is a question of fact in each case, and the matter of volition, at least under our holdings, is important in the determination.

We believe our decision in Bull v. Kistner, supra, points the way to the result we must reach here. There, as here, the absence from an established place of abode was involuntary, in the one case because of imprisonment and in the other because of military service. In the Bull case we declined to follow the reasoning of Kurilla and Booth. We said the bare fact of defendant's imprisonment, without more, did not change his usual place of abode. We further said his "actions and intentions in regard thereto are important considerations."

■ In the matter now before us we hold defendant's induction into military service, without more, did not change his usual place of abode.

This conclusion is supported by Rovinski v. Rowe, C.C.A., 6 Cir., 131 F.2d 687, 689; James v. Russell F. Davis Incorporated, et al, U.S.D.C., N.D.Ind., 163 F.Supp. 253, 256; Doyle v. Jorgensen, 82 Nev. 196, 414 P.2d 707, 709; Karlsson v. Rabinowitz, 4 Cir., 318 F.2d 666, 668.

■ When one is inducted into military service, there is a presumption he retains his "dwelling house or usual place of abode." Such a presumption may be rebutted by any evidence showing a contrary intent. Marriage, for instance, would ordinarily show an intention to separate from the parental home; or the intention to make a career of the service would negative both the idea of temporary absence and the involuntary concept. Likewise an announced or otherwise manifested intention not to return to one's former abode would usually be sufficient. We cite these only as examples of what may rebut the presumption and not as the only matters which might be shown for that purpose.

We do not believe our conclusion conflicts in any way with Hysell v. Murray, supra, upon which defendant relies. As previously mentioned, that decision recognized each case must turn on its own factual situation. There defendant was married and lived with his wife on a military base; he had been in service for 15 years

and expected to remain as a career officer; his affidavit showed he expected to return to his former home "when he retired." Furthermore it appeared defendant had resided in his father's home only on short leave periods and had not maintained it as his own dwelling place for some years. Finally, the court made this statement 28 F.R.D. at page 588, "His present intention of ultimately making Ottumwa his home when he retires from the army, does not in itself make either of these [two places where substituted service was made] his 'dwelling house or usual place of abode' at the present time."

Under the circumstances of that case there can be little argument about the result reached.

 We agree with the trial court that the substituted service here was valid.

Defendant also asserts the notice served upon him does not meet constitutional requirements of due process. He does not claim the rule itself is unconstitutional, but merely that its interpretation by the trial court in this instance has denied him the fundamental protection to which he is entitled.

 The essentials of due process are satisfied if the notice is one which is reasonably calculated to come to defendant's attention and to give him an opportunity to defend the action, if he desires to do so. Franklin v. Bonner, 201 Iowa 516, 521, 207 N.W. 778, 781; Blew v. Powers, 257 Iowa 1112, 1116, 136 N.W.2d 273, and citations.

In Bull v. Kistner, supra, 257 Iowa at page 974, 135 N.W.2d at page 549, we said in answer to a similar claim, "Once it is determined service was made by leaving a copy with a proper person at defendant's usual place of abode, such service is uniformly upheld." See Milliken v. Meyer, 311 U.S. 457, 462, 61 S.Ct. 339, 342, 85 L. Ed. 278, 132 A.L.R. 1357.

We find no violation of due process here. With modern methods of communi-

cation and transportation, it makes little difference if a defendant is several hundred or several thousand miles from home. It is not distance, but military discipline, which is his problem. If a defendant cannot secure leave to defend a suit, his dilemma is the same, regardless of his whereabouts.

The troubles which beset such a defendant are indeed substantial but they are not constitutional. They would no doubt entitle him to have the case continued upon proper showing, but they form no impediment against securing jurisdiction over him by substituted service which is otherwise valid and sufficient.

Affirmed.

All Justices concur.