# In the Iowa Supreme Court

No. 23–2035

Submitted April 16, 2025—Filed June 13, 2025

**Rhonda C. Lucas,**

Appellee,

vs.

**Peter J. Warhol,**

Appellant.

Interlocutory appeal from the Iowa District Court for Polk County, Jeanie Vaudt, judge.

A defendant appeals the denial of his motion to dismiss for lack of timely service and also challenges the method of alternative service permitted by the district court. **Affirmed in Part, Reversed in Part, and Case Remanded.**

May, J., delivered the opinion of the court, in which all justices joined.

Jordan R. Reed (argued) and Tyler S. Smith of Durick Tuttle Smith PLC, Des Moines, for appellant.

Zachary C. Priebe (argued) and Jeff Carter of Jeff Carter Law Offices, P.C., Des Moines, for appellee.

**May, Justice.**

One of the first steps in a personal injury lawsuit is for the plaintiff to serve the defendant with an original notice and a copy of the petition. Ordinarily, this step needs to be completed within ninety days after the lawsuit is filed. In many cases, this step requires relatively little effort. But not in this case.

In this case, the defendant seems to have no fixed address. He may have experienced homelessness. Regardless, the plaintiff has struggled to serve him. Eleven months after the lawsuit was filed, the defendant still hadn't been served. Ultimately, the district court permitted the plaintiff to serve the defendant vicariously, that is, by serving an attorney who had been hired by the defendant's liability insurance carrier to represent the defendant. The attorney then applied for interlocutory review on behalf of the defendant. We granted the application. Soon after, the plaintiff moved to dismiss the appeal as moot because the plaintiff had personally served the defendant while the application for interlocutory review was pending. A single justice denied the motion.

Now we consider three questions. First: Should the district court have dismissed the case because the plaintiff failed to timely serve the defendant? Second: Did the district court err by permitting the plaintiff to serve the attorney rather than the defendant? Third: What effect, if any, should be given to the plaintiff's personal service of the defendant while the application for interlocutory review was pending?

As to the first issue, we conclude that the district court was not required to dismiss the case. The plaintiff's efforts to achieve service—plus the difficulty of serving a defendant with no known address—combine to provide good cause to extend the time for service.

As to the second issue, however, we conclude that the district court erred in ordering service on the attorney. Although the insurer hired the attorney to protect the defendant's interests, there's no evidence that the attorney has had actual contact with the defendant. As far as we know, they are strangers. So we cannot say that serving the attorney would provide the defendant with the notice that due process requires.

As to the third issue, we conclude that the plaintiff's personal service of the defendant while the interlocutory review application was pending should be treated as timely service. Within ten days after the issuance of procedendo, the plaintiff must file a certificate of this service in the district court. Defendant Warhol's time to move or answer under Iowa Rule of Civil Procedure 1.303(1) will run from the filing of the certificate of service in the district court.

We affirm in part, reverse in part, and remand for further proceedings.

**I. Background.**

**A. How Lawsuits Start.** Because this appeal is about procedure in a civil lawsuit, we start with a brief overview of the rules governing that procedure. The first step in a civil lawsuit is for the plaintiff to file a petition. That starts the lawsuit. Iowa R. Civ. P. 1.301(1). The petition generally describes the claims that the plaintiff is pursuing, the relief she seeks (money damages, for example), and the person from whom she seeks relief (usually called "the defendant").

Once the petition is filed, the next step is for the plaintiff to have the defendant served with a copy of the petition as well as another document called "the original notice." *Id.* r. 1.302(3). The contents of the original notice are dictated by Iowa Rule of Civil Procedure 1.302. Those required contents include the name of the court involved, the names of the parties, the date on which the petition was filed, the date by which the defendant must respond to the lawsuit

with an answer or motion, and a warning that "if the defendant" fails to timely respond, "judgment by default may be rendered" against the defendant "for the relief demanded in the petition." *Id.* r. 1.302(1) (flush language); *see also id.* r. 1.302(1)(*a*)–(*d*). The original notice must "be signed by the clerk" of court and "be under the seal of the court." *Id.* r. 1.302(2).

Formalities like these make sense because the original notice is not an ordinary document. Rather, the "original notice is the formal writing, issued by authority of law, for the purpose of bringing defendants into court to answer plaintiff's demands in a civil action." *Wilson v. Ribbens*, 678 N.W.2d 417, 420 (Iowa 2004) (quoting *Jacobson v. Leap*, 88 N.W.2d 919, 921 (Iowa 1958)).

That purpose is achieved—the defendant is officially brought into court and required to defend against the lawsuit—when the plaintiff personally serves the defendant with the original notice and a copy of the petition. Generally speaking, "[p]ersonal service" involves actually "delivering a copy" to the defendant. Iowa R. Civ. P. 1.305. As will be explained, however, our law sometimes permits other options.

In any event, "[t]he plaintiff is responsible for service of an original notice and petition within the time allowed under" our rules of civil procedure. *Id.* r. 1.302(3). More particularly, rule 1.302(5) says that "service of the original notice" must occur "within 90 days after filing the petition." *Id.* r. 1.302(5). If that doesn't happen, the court must either "direct an alternate time or manner of service" or "dismiss the action without prejudice." *Id.* But the court must not dismiss the action if the plaintiff "shows good cause for the failure of service." *Id.* Rather, when good cause is shown, the court must "extend the time for service for an appropriate period." *Id.*

**B. This Lawsuit.** With this background in mind, we turn to the lawsuit before us. This lawsuit is about a car accident that occurred on January 12, 2021. According to the petition, plaintiff Rhonda Lucas was driving westbound on Interstate 80 in Des Moines. Defendant Peter Warhol was driving behind Lucas. Warhol rear-ended Lucas. Lucas suffered injuries. Warhol received several citations, including for leaving the scene of the accident.

On January 11, 2023, Lucas started this lawsuit by filing her petition. Lucas named two defendants: Warhol and Progressive Direct Insurance Company (Progressive Direct), the carrier for Lucas's underinsured-motorist (UIM) coverage.[1]

As mentioned, the rules allowed Lucas ninety days to serve the defendants. So, because Lucas filed her petition on January 11, she had until April 11 to serve Warhol and Progressive Direct.

Service was easily accomplished as to Progressive Direct. One of its agents signed an acceptance of service, which Lucas filed in February.

Service was not so easy as to Warhol. In late March, Lucas asked the district court to extend the time for service. Lucas explained that she had been unable to serve Warhol despite various efforts. For instance, Lucas paid a sheriff to attempt service at a Minnesota address that was listed for Warhol on the accident report. When that was unsuccessful, Lucas hired a Des Moines private investigator to find Warhol's new address. Also, Lucas served the Iowa Department of Transportation (DOT) pursuant to Iowa Code section 321.501 (2023). As will be discussed, that portion of our Code authorizes a special multi-

---

[1]UIM coverage is "[a]utomobile insurance that protects against the insured's loss caused by a tortfeasor with insufficient liability-insurance limits to pay for the insured's loss." *Underinsured-Motorist Coverage*, *Black's Law Dictionary* 1842 (12th ed. 2024). For instance, suppose Lucas suffered $100,000 in damages but Warhol's liability coverage has limits of only $20,000. The $80,000 gap could be filled in part or in whole by Warhol's UIM coverage.

step process for serving nonresident motorists. *Id.* By serving the DOT, Lucas completed the first of the required steps. *See id.* § 321.501(1).

On March 24, the district court granted Lucas's motion for additional time. The order allowed Lucas "up to and including June 12, 2023," to complete service on Warhol.

About a month later, on April 21, Lucas's counsel filed a certificate of service. In this certificate, Lucas's counsel seemed to claim that Lucas had completed the full process for serving Warhol under section 321.501. The certificate identified three events through which the statute's requirements were allegedly satisfied. First, as already mentioned, Lucas had served the petition and original notice on the DOT. Second, the DOT had issued Lucas a "Certificate of Filing." Finally, Lucas had mailed that certificate "by certified mail" to two addresses that were believed to be Warhol's. One was the Minnesota address from the accident report. The second was another Minnesota address that the private investigator had provided. There is no evidence, though, that either mailing was received or rejected by Warhol.

On June 12, the court's deadline for service came and passed. A week later, on June 19, an attorney named Tyler Smith filed an appearance on behalf of Warhol. As will be discussed more, however, it is not clear whether Attorney Smith has ever had actual contact with Warhol. But it seems undisputed that Attorney Smith was retained by Warhol's liability insurance carrier to appear on Warhol's behalf.

Also on June 19, Attorney Smith filed a motion to dismiss on behalf of Warhol. The motion identified a number of deficiencies in Lucas's attempted service under section 321.501. For instance, although our cases have interpreted section 321.501 to require proof that the defendant actually received

or rejected the mailed notice, Lucas's certificate did not claim that Warhol had actually received or rejected Lucas's mailings. Indeed, according to the motion, Attorney Smith had learned on April 4 "that Warhol was homeless and had nowhere to receive mail." And so, Warhol could not have received Lucas's mailings, and service could not have been achieved.

About ten days later, on June 29, Lucas filed another certificate of service. This certificate claimed that Lucas had once again served the DOT, this time on May 30. And the DOT had provided a certificate of filing. And Lucas had again mailed this certificate of filing to the same two addresses. This time, however, Lucas had used *restricted* certified mail. But here, too, Lucas provided no evidence that Warhol actually received or rejected the mailed notices.

Also on June 29, Lucas resisted the motion to dismiss. Lucas claimed that she had complied with section 321.501 through her May 30 service on the DOT and her subsequent restricted certified mailings to Warhol's supposed addresses. She also noted that the statute's plain language contained no requirement that Warhol actually receive the mailings. And so, Lucas "request[ed] that the Court deny Defendant Warhol's pre-answer motion to dismiss" because Warhol had been "properly served under Iowa Code § 321.501 prior to" the June 12 deadline.

A few days later, on July 3, Lucas filed a notice of intent to seek a default judgment against Warhol. Typically, a "default judgment" is a judgment that is entered against a defendant who has failed to timely respond to a lawsuit after being properly served. *See* Iowa Rs. Civ. P. 1.971(1), 1.973.

Two days later, on July 5, Attorney Smith moved to strike Lucas's default notice and also replied in support of the motion to dismiss. Smith again emphasized that under our interpretative caselaw, section 321.501 requires

actual delivery to Warhol or refusal by Warhol, neither of which had occurred. And so Lucas's purported service on Warhol was not valid.

On July 14, Lucas resisted the motion to strike and also responded to Attorney Smith's reply.[2] Lucas again argued that section 321.501 had indeed been satisfied and, therefore, no additional service efforts were necessary. In the alternative, Lucas suggested that Warhol's liability insurance carrier could "be substituted" for Warhol because it appeared "likely" that a claims representative "has been in contact with Mr. Warhol." "[A]s another alternative," Lucas asked for "another extension of time to effectuate service" on Warhol and, in addition, an order requiring Attorney Smith or Warhol's liability carrier to provide Lucas with "contact information" for Warhol.

On September 23, the district court issued an order denying both of Attorney Smith's pending motions. The court found that Warhol had been evading service and engaging in misleading conduct. And so the court granted Lucas's request for additional time, "up to and including December 22, 2023," to personally serve Warhol. The court declined to grant any of the other relief requested by Lucas.

On October 6, Attorney Smith filed a motion asking the court to reconsider its denial of the motion to dismiss. Lucas resisted. And Lucas asked the court to permit service on Attorney Smith or Warhol's liability carrier in lieu of personal service on Warhol.

On November 12, the court entered an order denying the motion to reconsider. The court noted that its September 23 order—which gave Lucas "up to and including December 22, 2023," to personally serve Warhol—"stands."

---

[2]Although our rules authorize a moving party to file a reply, they do not authorize the nonmoving party to file a response to the reply. *See* Iowa R. Civ. P. 1.431(4)–(5).

On November 21, Lucas filed another motion. Once again, Lucas requested leave to serve Attorney Smith instead of Warhol. This time, the court agreed. On November 29, the court granted Lucas's motion.

On December 5, Lucas personally served Attorney Smith. On December 12, Attorney Smith applied for interlocutory review. We granted the application on January 5.

**C. Recent Events.** About two weeks later, Lucas filed a motion asking us to dismiss this interlocutory appeal as moot. As support, Lucas provided a certificate showing that Warhol had been personally served in Minnesota on January 3. Attorney Smith resisted. A single justice denied the motion. This appeal then proceeded to briefing, which is now complete.

**II. Merits.**

Attorney Smith's brief raises two issues: (1) Did the district court err by declining to dismiss the case based on Lucas's failure to timely serve Warhol? And (2) did the district court err by permitting Lucas to serve Warhol through service on Attorney Smith? We address each issue in turn. We also discuss Lucas's attempts to serve Warhol through Iowa Code section 321.501. And we address Lucas's personal service on Warhol while the application for interlocutory review was pending.

**A. Refusal to Dismiss.** We start by considering whether the court should have dismissed this case instead of granting Lucas additional time to attempt service. Before answering, though, we think the question should be narrowed somewhat. As explained, the court allowed extra time for service on more than one occasion. And the parties seem to agree that it was appropriate for the court to make the first extension, which moved the service deadline from April 11 to

June 11. The only dispute is about whether it was appropriate to extend the deadline beyond June 11. We focus on that narrower dispute.

1. *Overview.* We start with some background principles. To justify an extension of time for service, the plaintiff must demonstrate "good cause." Iowa R. Civ. P. 1.302(5); *see also Crall v. Davis*, 714 N.W.2d 616, 619–20 (Iowa 2006) ("Extension of time requires a showing of good cause." (quoting *Meier v. Senecaut*, 641 N.W.2d 532, 541 (Iowa 2002))). Of course, good cause can mean different things in different legal contexts. *State v. Damme*, 944 N.W.2d 98, 104 & n.2 (Iowa 2020). In the context of extensions of time for service, good cause requires the plaintiff to

> have taken some affirmative action to effectuate service of process upon the defendant or have been prohibited, through no fault of his [or her] own, from taking such an affirmative action. Inadvertence, neglect, misunderstanding, ignorance of the rule or its burden, or half-hearted attempts at service have generally been waived as insufficient to show good cause. Moreover, intentional nonservice in order to delay the development of a civil action or to allow time for additional information to be gathered prior to "activating" the lawsuit has been held to fall short of . . . good cause . . . .

*Henry v. Shober*, 566 N.W.2d 190, 192–93 (Iowa 1997) (alteration in original) (quoting *Vincent v. Reynolds Mem'l Hosp., Inc.*, 141 F.R.D. 436, 437–38 (N.D. W. Va. 1992)), *superseded by rule on other grounds*, Iowa R. Civ. P. 1.302(5), *as recognized in*, *Dickens v. Associated Anesthesiologists, P.C.*, 709 N.W.2d 122 (Iowa 2006); *see also Rucker v. Taylor*, 828 N.W.2d 595, 599–600 (Iowa 2013); *Crall*, 714 N.W.2d at 620–21; *Wilson*, 678 N.W.2d at 421; *Meier*, 641 N.W.2d at 542.

We've also said that

> [g]ood cause is likely (but not always) to be found when the plaintiff's failure to complete service in timely fashion is a result of the conduct of a third person, typically the process server, the defendant has evaded service of the process or engaged in misleading conduct, the

plaintiff has acted diligently in trying to effect service or there are understandable mitigating circumstances . . . .

*Wilson*, 678 N.W.2d at 421 (alteration and omission in original) (quoting 4B *Wright & Miller's Federal Practice & Procedure* § 1137, at 342 (3d ed. 2002) [hereinafter *Wright & Miller's Federal Practice & Procedure*]); *see also Rucker*, 828 N.W.2d at 600; *Crall*, 714 N.W.2d at 621.

2. *Application.* With these principles in mind, we now consider whether the district court was correct in finding good cause to extend Lucas's time for service past June 11. As noted, the district court found that there was good cause because Warhol "has engaged in misleading activity and is actively evading service." We are bound by this factual determination if it is supported by substantial evidence in the record. *Crall*, 714 N.W.2d at 619. "Evidence is substantial if 'a reasonable mind would accept it as adequate to reach a conclusion.' " *Id.* (quoting *Bus. Consulting Servs., Inc. v. Wicks*, 703 N.W.2d 427, 429 (Iowa 2005) (per curiam)).

Lucas points to several facts that purportedly show misleading activity and evasion by Warhol. But we see things differently. Here is a summary of our thinking:

- Lucas points to Warhol's 2021 citation for leaving the scene of the accident. But this tells us nothing about whether Warhol was avoiding service in 2023 when Lucas was trying to serve Warhol.

- Lucas points to an April 6 email from Warhol's liability carrier, in which the carrier disputed Lucas's claim that Lucas had actually served Warhol. But we find nothing deceptive in the text of the email, which is reproduced as an appendix to this opinion. Now, it is apparently true that by April 4, the carrier had information "that Warhol was homeless and had nowhere to receive mail." Lucas believes that the carrier should

have mentioned that information in the April 6 email. Indeed, according to Lucas, the omission of that information made the email misleading. Even if that's true, though, we would see no reason to attribute any misconduct *to Warhol.* There is no record evidence that Warhol was directing—or even in contact with—the carrier.

- Lucas suggests that Warhol retained Iowa counsel—Attorney Smith— to appear in the lawsuit. But there is no evidence that Warhol personally retained Smith. Indeed, there's no evidence that Warhol and Smith have *ever* communicated. Rather, the parties seem to agree that Attorney Smith was retained *by an insurance carrier,* not Warhol personally.

- Lucas suggests that Warhol could have established a post office box or other known mailing address. But we don't think Warhol was under any obligation to take those steps. In any event, we find nothing evasive or misleading about Lucas's (apparent) failure to maintain a personal mailing address. Suppose Warhol were staying with his mother, as Lucas has sometimes suggested might be the case. In that scenario, Warhol might see no reason to establish a separate mailing address in his own name.

- Lucas suggests that it "seems unlikely" that Warhol's liability carrier had "failed to communicate notice" of the lawsuit to Warhol.[3] But, again, this record contains no evidence that Warhol's carrier was ever

---

[3]We note that a defendant's actual knowledge of a lawsuit does not obviate the need for personal service. Iowa Rs. Civ. P. 1.302, 1.305; *Henry,* 566 N.W.2d at 192 ("Notice of the possibility of a lawsuit is not sufficient; the party being sued must be served with an original notice as required by our rules of civil procedure."); *see also Mokhtarian v. GTE Midwest Inc.*, 578 N.W.2d 666, 669 (Iowa 1998); *Tillman v. Hinson,* No. 23–1255, 2025 WL 546741, at *3 (Iowa Ct. App. Feb. 19, 2025).

in actual contact with Warhol. And even if the carrier did inform Warhol of the lawsuit, there's still no evidence that Warhol responded by evading service.

- Finally, Lucas points out that she ultimately did locate Warhol and served him in January 2024 when Warhol attended an unrelated court proceeding. This doesn't show that Warhol was evading Lucas. It shows that Warhol was living a sufficiently public life that Lucas was able to find him.

In short, we find no substantial evidence to support a theory of evasion or dishonesty by Warhol. So that theory cannot support the district court's finding of good cause.

Even so, we agree with Lucas that there are alternative grounds on which to affirm the district court's good-cause finding. As Lucas notes, good cause can be found when "the plaintiff has acted diligently in trying to effect service or there are understandable mitigating circumstances." *Wilson*, 678 N.W.2d at 421 (quoting 4B *Wright & Miller's Federal Practice & Procedure* § 1137, at 342). This record shows that although Lucas could have done more, she was diligent in trying to resolve the problem of service. Her diligence is shown by her work with the Minnesota sheriff, her work with a private investigator, and her efforts to achieve service through section 321.501 (although, as will be discussed more, Lucas made some errors there). Her diligence is also shown by her repeated efforts to obtain assistance from the district court. Moreover, although we do not think it's been shown that Warhol actively *evaded* service, the parties seem to agree that Warhol experienced homelessness and had no place to receive mail. If it weren't for *those* circumstances, we think Lucas would have served Warhol long ago through her efforts with the sheriff, private investigator, or

section 321.501. So we believe those are the kind of "understandable mitigating circumstances" that justify allowing extra time for Lucas to achieve service. *Id.* (quoting 4B *Wright & Miller's Federal Practice & Procedure* § 1137, at 342).

Because there was good cause to permit additional time for service, we affirm the district court's refusal to grant Warhol's motion to dismiss.

**B. Was Service on Attorney Smith Appropriate Alternative Service on Warhol?** We next turn to the question of whether Warhol was properly served through service on Attorney Smith. We conclude that he was not.

Iowa Rule of Civil Procedure 1.305(14) permits the district court to order an alternative method for personal service when two conditions are met. First, the court must determine that "service cannot be made by any of the methods provided by" rule 1.305. *Id.* Second, the method ordered by the court must be "consistent with due process of law." *Id.*

Here, we think the first condition was probably met. By the time the court ordered alternative service in November 2023, Lucas had expended substantial resources attempting to serve Warhol. These efforts had not been successful. Moreover, based on all of the circumstances before the court at that time, it appeared there was very little chance that further efforts would result in success. Under those circumstances, it was appropriate for the court to consider whether some alternative method of service would be appropriate.

This brings us to the second condition: to qualify as a proper method of service, the method chosen must be "consistent with due process of law." *Id.* This means the method must be "reasonably calculated" to bring the notice "to [the] defendant's attention and to give him an opportunity to defend the action, if he desires to do so." *Hron v. Ryan*, 164 N.W.2d 815, 819 (Iowa 1969); *see also Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Here the question is whether due process is satisfied by serving an attorney who has been retained to represent the defendant. The answer depends on the particular circumstances of the case. In each individual case, the court must determine whether service on the attorney "is notice reasonably calculated, under all the circumstances, to apprise" the represented party "of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314.

For instance, in *Ackelson v. Manley Toys, Inc.*, the court of appeals found that due process permitted service on the defendants' local counsel because, "undoubtedly," such service would provide the defendants with notice and an opportunity to defend "under the limited circumstances presented" in that case. No. 14–0469, 2015 WL 4935560, at *5 (Iowa Ct. App. Aug. 19, 2015). In *Ackelson*, the plaintiffs wanted to serve two Chinese companies located in Hong Kong. *Id.* at *1. But the companies did not have an agent for service of process in Iowa or the United States. *Id.* So the plaintiffs first attempted service pursuant to a foreign-service provision of the Hague Convention. *Id.* An officer of the High Court of Hong Kong served the companies and then submitted return affidavits stating that a staff member for the companies was served at the companies' registered office. *Id.* But the companies successfully quashed that service by denying any relation to the staff member. *Id.* at *2. So the plaintiffs filed a motion for alternative service. *Id.* They asked to serve the companies through their local attorneys in Iowa. *Id.* In support of their motion, the plaintiffs presented evidence of deliberate tactics by the companies to evade service. *Id.* The district court granted the motion and permitted alternative service. *Id.* The court of appeals affirmed. *Id.* at *6. The alternative service "afforded the defendants due process,"

the court held, because "local counsel [were] in direct and substantial contact with [the defendants' Hong Kong] attorneys." *Id.* at *5.

Conversely, in *In re Marriage of Meyer,* our court determined that due process was not satisfied by service on the respondent's attorney. 285 N.W.2d 10, 11–12 (Iowa 1979). There, the district court set a hearing for a child support modification and then directed that notice of the hearing be mailed by regular mail to the respondent or the respondent's attorney. *Id.* at 11. As it turned out, notice was mailed to the respondent's attorney only, not to the respondent. *Id.* But the respondent's attorney had only represented the respondent in the prior divorce proceedings—and those proceedings had ended eight months earlier, as had the attorney's representation. *Id.* at 11–12. And in the meantime, the respondent had moved to Minnesota. *Id.* at 10. Under those circumstances, we held it was "clear" that mailing notice to the attorney was not the kind of notice that is "calculated to afford [the respondent] an opportunity to appear and resist" as due process requires. *Id.* at 12.

As in *Meyer,* we cannot find that Warhol's due process rights would be satisfied through service on Attorney Smith. *See id.* at 11–12. As explained, Attorney Smith was hired by a liability insurer to appear in this case.[4] But the record contains no evidence that Warhol has had contact with the liability insurer since the case began. Nor does the record contain evidence that Warhol has *ever* had contact with Attorney Smith. Nor is there evidence that Attorney Smith even knew how to contact Warhol, or vice versa. The closest thing we have is Attorney Smith's statement that he had "learned" that Warhol "was/is

---

[4]Lucas makes much of the fact that both Warhol's liability carrier and Lucas's UIM carrier are parts of the Progressive family of companies. At oral argument, though, it was made clear that these two entities are separate companies with separate files. So we decline to treat them as a single entity. And even if they were the same entity, it's not clear that that would change the basic problem here, that is, the lack of contact with Warhol.

homeless and does not have an address to receive mail." This gives us no comfort that service on Attorney Smith would have been reasonably calculated to reach Warhol. Indeed, we read Attorney Smith's statement to mean that he *did not have* a reliable way to contact Warhol. Accordingly, we must reverse the district court's order permitting service on Warhol through service on Attorney Smith.

**C. Counterarguments.** We have considered all of Lucas's counterarguments. For instance, we have considered Lucas's argument that because she is (allegedly) a third-party beneficiary of Warhol's liability insurance contract, she is entitled to serve Warhol through attorneys who were hired by the liability carrier. Because we do not think this argument was raised below, we are reluctant to address it. In any event, we do not think Lucas has shown entitlement to relief. The record provides no basis to conclude that Lucas should be considered a third-party beneficiary of Warhol's contract with his liability carrier. *See Long v. McAllister*, 319 N.W.2d 256, 262 (Iowa 1982) (rejecting the injured plaintiff's third-party beneficiary claim because the insurance contract was not part of the record and, therefore, the court had "no basis for determining that it contains an express or implied intention to make the [plaintiff] a policy beneficiary"). Moreover, even if we assumed that Lucas has *some* rights as a third-party beneficiary, we still couldn't say that Lucas has the *specific* right to serve Warhol through the insurance company or the attorneys it hires, such as Attorney Smith.

We have also considered Lucas's argument that because the liability carrier has appointed Attorney Smith to defend Warhol in these early stages of this case, it is "nonsensical" to think that Warhol will "lack . . . the ability to defend himself" throughout this case. While this idea has some surface appeal, it fails under scrutiny. For one thing, we have no way to know whether there are

or will be conflicts between Warhol and his insurer. *See* 14A Steven Plitt et al., *Couch on Insurance 3d* § 202:21, at 202-92 to -93 (2020 rev. ed. 2020) (discussing the effect of a conflict of interest on the right to control the defense); *see also Winterstein v. Pollard*, 270 N.Y.S.2d 525, 527 (Sup. Ct. 1966) ("If defendant has failed to report the accident to the carrier or otherwise acted in a fashion which would constitute a violation of her obligation under the policy to cooperate, the insurer's interest would be adverse to insured, or at the very least there would be a conflict of interests.").

And even assuming no conflicts arise, Attorney Smith can only do so much if Warhol isn't available to help in the defense. For instance, if Lucas propounds interrogatories, Attorney Smith will need Warhol's help to respond. *See* Iowa R. Civ. P. 1.517(4)(*b*)–(*c*) (permitting sanctions for failure to answer interrogatories). If Lucas serves notice for Warhol's deposition, Attorney Smith will need Warhol to be present. *See id.* r. 1.517(4)(*a*), (*c*) (permitting sanctions for failure to appear at a deposition). When it comes time for trial, Warhol may need to be present there, too. Simply put, although Attorney Smith hasn't yet needed Warhol's help to address the legal issues surrounding service, we have no basis to conclude that Attorney Smith could effectively represent Warhol through the entirety of this case without Warhol's participation.

We have also considered the possibility that even though service on Attorney Smith was inadequate, perhaps Lucas properly completed service through her attempted uses of Iowa's nonresident motor vehicle statute. *See* Iowa Code §§ 321.498–.512. We conclude that she did not.

As explained, the statute provides a special procedure for serving nonresident motorists in lawsuits arising from automobile collisions. For our

purposes here, the statute's relevant requirements are found in section 321.501, which states:

> The plaintiff in any action against a nonresident shall cause the original notice of suit to be served by doing all of the following:
>
> 1. By filing a copy of the original notice of suit with the director [of the DOT], together with a fee of two dollars.
>
> 2. By mailing to the defendant, and to each of the defendants if there are more than one, within ten days after said filing with the director, by restricted certified mail addressed to the defendant at the defendant's last known residence or place of abode, a notification of the filing with the director.

Iowa Code § 321.501.

We have said that these requirements must be "strictly" followed. *Johnson v. Brooks*, 117 N.W.2d 457, 459–460 (Iowa 1962). Moreover, although Iowa Code section 321.501(2) speaks only of "mailing" a notification to the defendant's last known address "by restricted certified mail," we have long held that this mailing alone is not enough. *See Emery Transp. Co. v. Baker*, 119 N.W.2d 272, 277 (Iowa 1963) ("Clearly, then, the act of timely *mailing* a notification, properly addressed, by restricted registered mail, does not end plaintiff's obligation."). Rather, in *Emery Transportation Co. v. Baker*, we held that the plaintiff must "show actual or offered delivery of the noti[ce]" to the defendant. *Id.*; *see also L.F. Noll Inc. v. Eviglo*, 816 N.W.2d 391, 393, 395 (Iowa 2012) (discussing *Emery*). Put differently, the plaintiff must show the notice was either (1) actually received by the defendant or (2) offered to the defendant but refused. *Wolfs v. Challacombe*, 218 N.W.2d 564, 569 (Iowa 1974) ("Plaintiff has the burden to show either the notices were received by filing the return receipts or that defendant had an opportunity to receive the letter of notification but refused to do so.").

Applying these principles here, it is clear that Lucas's attempts did not meet the requirements of section 321.501(2). Lucas's first attempt was in April. On this occasion, Lucas mailed the notice to Warhol via regular certified mail, not *restricted* certified mail. This failed to meet the statute's plain requirement of restricted certified mail.

Lucas's second attempt was in May. On this occasion, Lucas properly mailed the notice to Warhol via restricted certified mail. It is undisputed, however, that Warhol neither received nor refused this mailing. So this mailing failed to satisfy the statute as we interpreted it in *Emery*. *See* 119 N.W.2d at 277.

At oral argument, Lucas suggested that we might revisit *Emery*. But because that suggestion was not briefed, we decline to reconsider *Emery*, which has guided our courts for six decades now and which seems to perform useful work by avoiding friction between section 321.501's service-by-mailing approach and the requirements of due process. *See In re Det. of Wygle*, 910 N.W.2d 599, 617 (Iowa 2018) ("If fairly possible, we will construe a statute to avoid doubt as to constitutionality."); *cf. Jones v. Flowers*, 547 U.S. 220, 225 (2006) ("We hold that when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so.").

**III. Disposition.**

For the reasons explained, we affirm the district court's refusal to dismiss but reverse the district court's order permitting service on Attorney Smith. We remand for further proceedings consistent with this opinion.

As mentioned, Lucas has filed with our court a certificate showing that Warhol was personally served on January 3, 2024. We believe this January 3 service should be considered timely. Within ten days after the issuance of

procedendo, Lucas must file the certificate of service in the district court. Warhol's time to move or answer under Iowa Rule of Civil Procedure 1.303(1) will run from the filing of the certificate of service in the district court.

**Affirmed in Part, Reversed in Part, and Case Remanded.**

## APPENDIX A

Full text of April 6, 2023 email discussed in part II.A.2.

---

From: Tracy Ann Dunphy
To: Jeff Carter; Sydney Armstrong
Subject: RE: Progressive Claim #21-7903878 Your client Rhonda Lucas
Date: Thursday, April 6, 2023 9:39:06 AM
Attachments: 05771__LACL154718_RSON_11813803.PDF

Jeff:

Thanks for the email! I did try and call you this morning to discuss but noted you were out of the office.

I reviewed the attached filing with the IDOT. I am of the understanding that for service to be perfected the below must be done:

In order to perfect service by way of filing with IDOT, the Plaintiff must do two things: (1) file a copy of the Original Notice with Director of IDOT; and (2) within 10 days after filing with the Director, mail by restricted certified mail, a notification of filing with the director to the Defendant. The attached Return of Service suggests that step one has been done, but step two has not – and Plaintiff had until March 26 to send the copy of the notification of filing with director via certified mail to Defendant. In addition, Iowa law requires that there be delivery of the notification to the Defendant – and proof that the Defendant personally accepted the certified mailing and/or refused to accept it.

Thus, at this time, I do not think service has been perfected on Defendant per Iowa Code section 321.501 and 505. Can you forward me the notification of the filing and delivery of the notification to Mr. Warhol?

Of course, Plaintiff has until June 12, 2023 to accomplish service per the recent Order extending time for Plaintiff to serve Defendant Warhol.

When you are available please feel free to call me and we can review! I will be in meetings most of today but available tomorrow and all next week! Thanks so much!!

Tracy


Tracy Dunphy
Claim Specialist Lead
[Additional contact information omitted]